FIRST DIVISION

June 30, 2003

No. 1-02-0969

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the

)    Circuit Court of

Plaintiff-Appellee,     )    Cook County.

)

)

v. )        No. 01 CR 13615

)

DARREN JOHNSON, ) Honorable

)    William G. Lacy,

Defendant-Appellant.             )    Judge Presiding.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Following a bench trial, defendant, Darren Johnson, was found guilty of aggravated domestic battery and aggravated battery.  The counts were merged and defendant was sentenced to four years in prison for aggravated domestic battery.  Defendant contends on appeal that the domestic battery statute is unconstitutionally vague due to the inclusion of persons in a "dating or engagement relationship" in its definition of "family or household members."  We disagree for the following reasons.

BACKGROUND

Because the sole issue raised by defendant on appeal is the constitutionality of the domestic battery statute, we will not set forth a lengthy recitation of the testimony provided at trial.  The testimony established that around 2 a.m. on May 18, 2001, defendant and Denise Howard were at the intersection of Union and 60th Streets in Chicago loudly arguing and using profanity.  Howard was holding an automobile antitheft device called the Club, with which she proceeded to smash the windows in defendant's car.  Defendant then started the car, stepped on the accelerator and hit Howard with the car, carrying her approximately 15 feet.  When defendant slowed the car, Howard fell to the ground by the passenger side front tire.  Defendant then turned the car around and drove back toward Howard, who was lying in the street.  Upon approaching Howard, defendant swerved the car and drove away.

Gerard Wilson, who witnessed the altercation, called the police and put a towel over Howard to stop her bleeding.  When the police arrived, Wilson provided a description of defendant's car.  Howard provided the police with defendant's name, stating her boyfriend, Darren Johnson, ran over her with his car.  Chicago police officer Herschel Lewis located defendant and his car at St. Bernard Hospital.  Defendant told Officer Lewis that he asked for the police to be called because someone had shot him.  Subsequently, at the police station, defendant spoke with Detective Thomas Benoit.  At that time, defendant reported that he and Howard had gotten into an argument.  He told the detective that Howard did not break any of his car windows with the Club, but that she took a gun from under his front passenger seat, got out of the car and shot at him.  The bullet shattered the window and grazed his right shoulder.  The next day, defendant told Detective Benoit that he and Howard argued in the car and Howard hit him in the shoulder and face with the Club.  She then got out of the car and began breaking his windows with the Club.  Defendant drove off, unaware that he had hit Howard with the car.  In speaking to the detective again the following day, defendant added that, when Howard was breaking his windows, he hit her with the car door, knocking her to the ground.

Howard herself told the detective that she had been drinking heavily at a funeral the day of the incident and the last thing she remembered was defendant hitting her with his car.

When asked, Howard testified at trial that she had been "dating" defendant for almost two years and she loved him.  She thought she and defendant might live together or get married after he was released from prison, although she stated she was "not hopeful" they would get married.  Howard said she spoke to defendant on the telephone three or four times since his imprisonment and she visited him every week.  She admitted to hitting defendant with the Club during their altercation, but denied shooting at him.  The parties stipulated that, as a result of being run over by defendant's car, Howard required surgery and received blunt trauma injuries, multiple pelvic fractures, fractures to her clavicle and multiple skin contusions.

Defendant also testified, upon being questioned, that Howard was his "girlfriend" and they had been "going together" approximately one year at the time of the incident.  Howard visited defendant and wrote him letters while he was in prison, and they planned to live together or get married upon his release.  Defendant testified that he and Howard had both been drinking the day of the incident.  In fact, Howard was intoxicated and attempted to jump out of his car while it was moving.  He grabbed her arm to prevent her from jumping and Howard began hitting him and grabbing the steering wheel.  After defendant drove onto the sidewalk, Howard got out of the car and began hitting the car windows with the Club.  When defendant tried to stop her, Howard hit him with the Club two or three times.  Defendant testified that after he got back into the car, Howard broke another window and glass flew into his eye.  When he started the car, he heard the Club hit the ground and heard Howard run away.  He then pulled away and hit something that he thought was a tree or pole.  He backed the car up and drove away.

The trial court found defendant guilty of aggravated domestic battery and aggravated battery.  Merging the aggravated battery conviction, the court sentenced defendant to four years in prison for aggravated domestic battery.  The sole issue raised by defendant on appeal is the constitutionality of the domestic violence statute, pursuant to which he was convicted of aggravated domestic battery.  Defendant contends that the statute is unconstitutionally vague due to the lack of a definition for the term "persons who have or had a dating or engagement relationship," which is included in the category "family or household members."  We find that the statute is not unconstitutionally vague as applied to the facts of defendant's case.

ANALYSIS

The Criminal Code of 1961 provides that a person commits aggravated domestic battery if he intentionally or knowingly causes great bodily harm or permanent disability or disfigurement to any family or household member.  720 ILCS 5/12-3.2(a), 3.3(a) (West 2002).  The definition of "family or household member," provided in the Code of Criminal Procedure (the Code), includes "persons who have or had a dating or engagement relationship."  725 ILCS 5/112A-3(3) (West 2002).  The Code further provides that "neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts shall be deemed to constitute a dating relationship."  725 ILCS 5/112A-3(3) (West 2002).  Defendant contends that, because the term "dating or engagement" relationship is not defined in the Code and is not susceptible to a single commonly understood meaning, the statute is unconstitutionally vague and his conviction thereunder must be reversed.

The constitutionality of a statute is a question of law and is subject to 
de novo
 review.  
People v. Fisher
, 184 Ill. 2d 441, 448, 705 N.E. 2d 67 (1998).  There is a strong presumption that a statute is constitutional and the challenging party bears the burden of rebutting that presumption.  
People v. Maness
, 191 Ill. 2d 478, 483, 732 N.E. 2d 545 (2000).  Where a defendant attacks a statute as unconstitutionally vague, we must first determine whether the statute addresses an activity protected by the first amendment.  
People v. Taher
, 329 Ill. App. 3d 1007, 1013, 769 N.E. 2d 1021 (2002).  If the statute involves a first amendment right, the defendant may argue the statute's vagueness as it applies to himself as well as the statute's facial unconstitutionality and its vagueness when applied to others.  
Taher
, 329 Ill. App. 3d at 1013.  Where the contested statute does not involve a first amendment right, it may only be examined as it applies to the case at hand.  
Taher
, 329 Ill. App. 3d at 1013.  

Defendant in this case does not argue that the domestic violence statute involves a first amendment right and this court has previously found that it does not.  In 
People v. Taher
, 329 Ill. App. 3d 1007, 769 N.E. 2d 1021 (2002), this court held that "[t]he plain language of section 12-3.2(a) indicates that the activity which is the subject of the statute is domestic battery" and "[d]omestic battery is not an activity protected by the first amendment."  
Taher
, 329 Ill. App. 3d at 1015.  We find no reason to depart from this conclusion in considering the activity prohibited by section 12-3.3(a), which merely adds that a person commits 
aggravated
 domestic battery when, in committing a domestic battery, he causes great bodily harm, permanent disability or disfigurement.  720 ILCS 5/12-3.3(a) (West 2002).  Like section 12-3.2(a), the activity that is the subject of section 12-3.3(a)
 is domestic battery and, as we stated in 
Taher
, domestic battery is not an activity protected by the first amendment.  Therefore, defendant does not having standing to argue that the statute is vague on its face or as applied to someone other than himself.  See
 
People v. Jihan
, 127 Ill. 2d 379, 384, 537 N.E. 2d 751 (1989).

Defendant does, however, have standing to raise the unconstitutionality of the domestic battery statute as it was applied to him.  In cases such as this one, which do not involve first amendment freedoms, due process is satisfied where: "(1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and trier of fact that its application does not depend merely on their private conceptions."  
People v. Greco
, No. 89940, slip op. at 11 (May 8, 2003).  These considerations are to be analyzed in light of the particular facts of the case at hand.  Therefore, defendant's challenge to the statute's constitutionality is without merit if, when examined in light of the facts of his case, the statute clearly applied to his conduct.  
People v. Ryan
, 117 Ill. 2d 28, 34, 509 N.E. 2d 1001 (1987).

Section 112A-3(3) of the Code classifies persons in a "dating or engagement relationship" as "family or household members" for purposes of the domestic battery statute.  725 ILCS 5/112A-3(3) (West 2002).  The section further provides that "neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts shall be deemed to constitute a dating relationship."  725 ILCS 5/112A-3(3) (West 2002).  As defendant argues, a potential difficulty with this term might arise where a relationship is new.  Some people might define one date as a "dating relationship," while others may not do so until after several dates.  However, a statute is not unconstitutionally vague merely because "one can conjure up a hypothetical dispute over the meaning of some of the act's terms."  
Greco
, slip op. at 11.  Defendant's argument in this regard is unavailing as the hypothetical situations he raises are not at issue in this case.  See 
Jihan
, 127 Ill. 2d at 386 (the issue is whether the statute clearly proscribes the conduct engaged in by defendant in this case).

Defendant himself testified that Howard was his "girlfriend."  He stated he had been "going with" Howard for one year before the incident, she visited him in jail, and they wrote letters to each other.  Defendant admitted that some of his letters contained the sentiment "I love you" or "love you."  He also stated that he and Howard were going to live together or get married after he was released from prison.  In further support of the existence of their dating relationship, Howard testified that defendant was her "boyfriend" and that she had been dating him for almost two years at the time of trial.  She stated that she loved defendant and they were planning on living together or maybe getting married after he was released from prison.  Howard visited defendant once a week in prison, called him on the telephone and wrote him letters.

In light of defendant's and Howard's testimony, their relationship was clearly a "dating relationship," which fell squarely within the parameters of the statute; it was not a casual acquaintanceship or ordinary fraternization in a business or social context.  Because a person of ordinary intelligence would undoubtedly conclude that defendant's relationship with Howard constituted a "dating relationship," defendant was provided with a reasonable opportunity to determine that his conduct of hitting Howard with his car was prohibited by the domestic violence statute.  See 
Taher
, 329 Ill. App. 3d at 1016; but see 
Jihan
, 127 Ill. 2d at 389.  Furthermore, given that their long-term, romantic relationship was established by defendant's own testimony, the enforcement of the statute in defendant's case was not arbitrary or capricious.  See 
Taher
, 329 Ill. App. 3d at 1016.

Although defendant argues that "even the [trial] court demonstrated confusion as to the nature of the relationship between [defendant] and Ms. Howard," we agree with the State that the court did not appear confused about the statute or the relationship at issue, but was instead commenting on the credibility of defendant's testimony.  The court specifically stated:

"Mr. Frazin has suggested these letters are innocent.  Maybe I would even give that argument some consideration if there wasn't more than one letter.  It's not just one letter, it's two letters.  It's clear to me that the defendant was trying to coach what his girlfriend or ex-girlfriend or alleged girlfriend was going to say here today, and that again I believe affects the defendant's credibility."

The court's comments were directed at defendant's credibility and his attempt to influence Howard's testimony at trial, and do not support defendant's argument that the statute is unconstitutionally vague.  Furthermore, the court subsequently found defendant guilty of aggravated domestic battery without hesitation and without additional comment.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

O'MALLEY
 and SMITH, J.J., concur.