NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200656-U

NO. 4-20-0656

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Ford County |
| CLAYTON T. MARCUM, | ) | No. 20CF53 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Matthew John Fitton, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The State failed to prove beyond a reasonable doubt defendant was in a dating relationship with the victim, warranting a reduction of defendant's aggravated domestic battery convictions to aggravated battery. Defendant failed to establish plain error as to his other claims.

¶ 2    In July 2020, the State charged defendant, Clayton T. Marcum, by information with two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2018)) for a September 1, 2019, attack on Greg Rudin. The State had previously charged defendant with aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2018)) for the attack on Greg in Ford County case No. 19-CF-72 (case 72). After an October 2020 jury trial, the jury found defendant guilty of both aggravated domestic battery charges in this case. At the December 2020 sentencing hearing, the Ford County circuit court sentenced defendant to consecutive prison terms of seven years on each count.

¶ 3    Defendant appeals, contending (1) his statutory right to a speedy trial was violated, (2) his right to counsel was violated due to incomplete admonishments under Illinois Supreme Court Rule 401 (eff. July 1, 1984), (3) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of aggravated domestic battery, and (4) his right to remain silent was violated. We affirm in part, reverse in part, and remand the cause to the circuit court for a new sentencing hearing.

¶ 4                                    I. BACKGROUND

¶ 5    At around 7:30 a.m. on September 1, 2019, Paxton police officer Brandon Ryan received a dispatch to Schoolhouse Apartments based on a report of a naked male lying behind the apartments. When Officer Ryan arrived, he observed a half-naked male, who was later identified as Greg Rudin. Greg appeared to have been lying outside on his back for a while and was not wearing pants and underwear. According to Officer Ryan, Greg looked to have been in a fight because he had swollen ears, dried blood on him, a dislocated jaw, and black eyes. An ambulance arrived and took Greg to the hospital where he was diagnosed with a subarachnoid hemorrhage and broken ribs. Two people at the scene told Officer Ryan they thought Greg had been upstairs with defendant. Officer Ryan located defendant and spoke with him. Defendant admitted he and Greg were friends and Greg had been in his apartment the previous evening. They had been drinking and wrestling. Defendant stated Greg left at 10 p.m. and went home. Later in the day, Officer Ryan obtained a search warrant for defendant's apartment. During the search, blood was found on a mattress in the apartment and in the stairwell outside defendant's apartment.

¶ 6                                    A. Case 72

¶ 7    On September 1, 2019, defendant was arrested for both aggravated battery (720

ILCS 5/12-3.05(a)(1) (West 2018)) and obstructing justice (720 ILCS 5/31-4(a) (West 2018)). On September 3, 2019, the trial court set defendant's bond, but defendant did not post bond. On September 27, 2019, the State charged defendant by information with one count of aggravated battery, which asserted that, in committing a battery, defendant knowingly caused great bodily harm to Greg, in that he struck Greg about the head and body. The charge also noted defendant may receive an extended-term sentence due to his prior conviction for aggravated battery in Iroquois County case No. 12-CF-11. See 730 ILCS 5/5-4.5-40(a) (West 2018). Three days later, the trial court held the preliminary hearing.

¶ 8        At the beginning of the preliminary hearing, the trial court appointed defendant counsel. The State presented the testimony of Officer Ryan. Officer Ryan testified he was told during the investigation defendant and Greg were in a "dating relationship of sorts." He also testified that, before the State filed the charge in this case, defendant made contact with Paxton police sergeant Robert Yates at the jail. Officer Ryan testified that, during defendant's conversation with Sergeant Yates, defendant explained he and Greg were "fighting like MMA fighters or UFC fighters" and not wrestling on September 1, 2019. Defendant admitted to Sergeant Yates that, during the fighting, he had struck Greg in the head causing blood to come out of Greg's mouth. When they were done fighting, defendant and Greg left defendant's apartment together, and Greg fell. After Greg fell, defendant stomped on him. Defendant demonstrated a "pretty hefty strike" for Sergeant Yates. At the conclusion of the hearing, the court found probable cause. At defendant's request, the case was set for the January 2020 jury term.

¶ 9        In January 2020, the State moved for an extension of the speedy-trial term under section 103-5(c) of the Code of Criminal Procedure (Procedure Code) (725 ILCS 5/103-5(c)

(West 2018)), noting it was still waiting on deoxyribonucleic acid analysis results. Defendant objected to the motion, and the trial court granted the State's motion. The court set defendant's jury trial for April 13, 2020. In March 2020, the State made an offer of an eight-year sentencing cap in exchange for defendant's plea of guilty. After consulting with his attorney, defendant rejected the State's offer and noted he wanted his attorney removed from the case. On April 13, 2020, the court continued the case to the July 2020 jury term due to an administrative order and the parties' agreement. After a May 22, 2020, hearing, the court allowed defendant to proceed *pro se*. On July 6, 2020, the State moved to dismiss the charge in case 72, which the court granted.

¶ 10                                    B. This Case

¶ 11            On July 6, 2020, the State filed the two aggravated domestic battery charges in this case. Count I alleged that, in committing domestic battery, defendant knowingly caused great bodily harm to Greg, defendant's family or household member, in that defendant struck Greg in the face with his fist and caused a subarachnoid hemorrhage. Count II asserted that, in committing domestic battery, defendant knowingly caused great bodily harm to Greg, defendant's family or household member, in that defendant stomped on Greg with his foot causing rib fractures. Both counts noted defendant may be sentenced to an extended term of 7 to 14 years' imprisonment due to his prior residential burglary conviction in Iroquois County case No. 13-CF-31.

¶ 12            The trial court held an arraignment hearing the day the State filed the charges in this case. The court read the two counts to defendant and noted he may be sentenced to an extended term of 7 to 14 years' imprisonment due to a prior residential burglary conviction. The court also explained defendant was subject to 85% sentencing and not day-for-day credit.

- 4 -

Defendant asked if the counts were aggravated batteries, and the court noted the charge was aggravated domestic battery. After reading the charges and explaining the possible penalties, the court noted defendant was representing himself in case 72 and asked defendant if he wanted to continue representing himself, hire counsel, or have the court appoint counsel. Defendant stated he still wanted to represent himself. The court then asked defendant if he understood the charges, and defendant replied in the affirmative. Next, the court asked the following: "The minimum and maximum penalties, including in this case the possible extended, you are extended term eligible? You also understand that the sentencing, the sentencing range, the mandatory supervised release and the applicable amount of probation, fines, assessments, restitution are applicable; you do understand that; right?" Defendant replied, "Uh-huh." The court also confirmed defendant understood he could have counsel appointed for him without cost if he was indigent and the attorney representing the State was an experienced prosecutor and not defendant's attorney. Last, the court asked defendant if he wished to waive his right to counsel, and defendant said, "Yeah."

¶ 13        After waiving his right to counsel, defendant questioned the filing of new charges, and the trial court noted its lack of involvement in that decision and told defendant, if he wanted to file any motion, he would need to put it in writing and send it to the circuit clerk's office. The court set the preliminary hearing, set bond, and noted the State's voluntary dismissal of the charge in case 72. Defendant continued to ask questions. The court again informed defendant he needed to file a written motion and explained the new charges against him, including the possible extended-term sentence of up to 14 years' imprisonment. Defendant then asked about the state of emergency due to COVID-19 and him being in custody, and the court told him the supreme court's ruling started the 120-day period over. Defendant then complained about being in

custody for almost a year, and the court told defendant the speedy-trial period starts over every time it is continued by agreement. Defendant then asked if the State could continue to file different charges, and the court told defendant to send the prosecutor a letter or file a written motion.

¶ 14          On August 4, 2020, the circuit court held the preliminary hearing, at which Officer Ryan and defendant testified. After hearing the testimony, the court found the State had proven probable cause. The court then explained to defendant what he was responsible for in preparing for trial. Defendant asked if his case was still aggravated battery with intent to do bodily harm, and the court responded the charge was a Class 2 felony of "straight" domestic battery.

¶ 15          At the beginning of defendant's October 2020 jury trial, the trial court again explained the two aggravated domestic battery charges and the sentencing possibilities, including an extended-term sentence of up to 14 years' imprisonment. The court asked defendant if he understood the charges and possible penalties, and defendant questioned the charge of aggravated domestic battery. The court noted he had arraigned defendant on aggravated domestic battery and again asked if he understood what he was charged with and the possible penalties. The following dialogue then took place:

          "MR. MARCUM [(DEFENDANT)]: Yes. I just wanted to make sure it wasn't like two or three charges at one time.

          THE COURT: No. We are doing the one case, and we are doing two counts of aggravated battery.

          MR. KILLIAN [STATE'S ATTORNEY)]: Aggravated domestic battery.

          THE COURT: Aggravated domestic battery.

MR. MARCUM:  So, I got one charge?

THE COURT:  Two charges, one case.  One case, he has alleged two separate charges. One being the hemorrhage, subarachnoid hemorrhage.

MR. MARCUM:  If I am found guilty, I am charged with two charges?

MR. KILLIAN: If you are found guilty on both, you are going to be sentenced to one sentence.

THE COURT:  You will not be sentenced twice.

MR. MARCUM:  Oh, so I would be looking at seven to 14 years?

THE COURT:  Yes.

MR. MARCUM:  Okay.  Just want to make sure."

After the above dialogue, the court indicated its desire to again address defendant's waiver of counsel.  Defendant indicated he had no problem representing himself.  The court then asked defendant a series of questions admonishing him about the difficulties and pitfalls of self-representation.  Defendant answered each question in the affirmative and did not have any questions at the end of the admonishments.

¶ 16        Next, the State's Attorney put on the record defendant had been offered a sentencing cap of 10 years' imprisonment if he pleaded guilty to one of the charges, and defendant declined the offer.  In explaining the offer to defendant, the court noted defendant's mandatory supervised release term was four years.  Defendant indicated he was still rejecting the State's offer.

¶ 17        The State presented the testimony of the following witnesses:  (1) Officer Ryan; (2) Mark Day, an emergency room physician; (3) Paxton police officer Chad Johnson; (4) Coy Cornett, Chief of the Paxton Police Department; (5) Robin Stadeli, a paramedic; (6) Jennifer

Macritchie, an Illinois State Police forensic scientist; (7) Patti Rudin, the victim's spouse; and (8) Sergeant Yates. It also presented several exhibits, including the recording from Sergeant Yates's body camera during his conversation with defendant at the Ford County jail. Defendant did not present any evidence. The evidence relevant to the issues on appeal is set forth below.

¶ 18            Officer Ryan testified he decided to speak with defendant a second time on September 1, 2019, because Officer Ryan had learned "[t]here was more of a relationship between the two."

¶ 19            Patti testified she had been married to Greg for 29 years, but they had been separated for the past 11 years. At the time of the incident, Greg had his own apartment.

¶ 20            Sergeant Yates testified defendant wanted to meet with him on September 6, 2019. Sergeant Yates and Chief Cornett had a conversation with defendant that day. During the interview, defendant indicated he had formed a relationship with Greg, and the relationship had turned sexual.

¶ 21            The recording of Sergeant Yates's interview of defendant was played for the jury. During the interview, defendant stated he had the "hots" for a girl named Carrie and went with Carrie to a residence. There, he met Greg on the Tuesday morning before the incident. Defendant stated he stayed at the residence a couple of nights and then noted Tuesday morning until Wednesday morning. On Wednesday morning, he left the residence with Greg. Defendant again stated they spent the night. Defendant further stated they went to defendant's apartment on Wednesday morning and did things but suggested they did not have sex. He explained Greg gave defendant "a blow job" and defendant "jacked [Greg] off." Defendant denied they did things not to the extreme like sex. Defendant appeared uncomfortable talking about the sexual encounter. Greg left defendant's apartment. On Wednesday afternoon, defendant tried calling

Greg, but he would not answer. Defendant went back to the residence where he first met Greg, and Greg was there. Two females at the residence were jealous about defendant being "all over" Greg or Greg being "all over" defendant. Greg came over to defendant's apartment on Saturday. They drank together and had plans to go out to a bar when the incident occurred. During the interview, defendant stated he had nothing against Greg and Greg seemed like a nice guy.

¶ 22 On the third day of trial and after the State had presented its first six witnesses, the prosecutor noted the residential burglary case stated on the Law Enforcement Agencies Data Sheet (LEADS) under defendant's name was not actually defendant's case. The trial court asked defendant if he had been convicted of residential burglary, and defendant replied in the negative. The court noted defendant was not subject to extended-term sentencing. The prosecutor then offered defendant a sentence of seven years' imprisonment in exchange for a guilty plea to one count of aggravated domestic battery, and defendant declined the offer.

¶ 23 At the conclusion of the trial, the jury found defendant guilty of both aggravated domestic battery charges. The trial court then noted it believed a presentence investigation report should be ordered and asked for any objections. The prosecutor answered in the negative, and defendant did not reply. The court explained to defendant a member of court services would talk to him and prepare a presentence investigation report. The court then ordered the presentence investigation report and asked the parties the amount of time needed for sentencing. Defendant replied it could be today if possible. The court stated it could not conduct the sentencing hearing that day because it had ordered a presentence investigation report. The prosecutor stated two hours, and the court asked defendant if that sounded correct. Defendant asked, "Two hours today?" and the court again noted it had ordered a presentence investigation report. The court set the date of the sentencing hearing and stated the following: "And Mr.

Marcum, for your benefit, I would admonish you that you want to cooperate with the Court Services as to the pre-sentence investigation. I am not sure who will be sent over, but someone will come over and speak to you."

¶ 24        Defendant did cooperate with court services, and Rocky Marron drafted the presentence investigation report. The report noted defendant claimed he had put Greg in an Ultimate Fighting Championship (UFC) move in which defendant had his arm around Greg's neck and his leg around Greg's waist, stretching him out. Defendant demonstrated the move for Marron. Defendant also expressed his frustration of being in jail for horseplay and denied stomping Greg that hard. Additionally, without prompting, defendant noted he had punched another inmate in jail for bragging about beating up a woman. The report noted another cellmate of defendant's had been injured and defendant was kept in a solitary environment for most of his jail time due to concerns for the welfare of other inmates. Marron recommended a sentence other than a community-based option because he did not believe defendant could be trusted to not commit further acts of violence. He believed defendant posed a continuous risk to community safety.

¶ 25        On December 9, 2020, the trial court held the sentencing hearing, and the State presented the testimony of Marron and Patti, the victim's wife. During his testimony, Marron demonstrated the UFC move that defendant demonstrated during his interview with Marron. He also testified defendant's attitude about the incident was minimizing and defendant had no appreciation for the damage he caused. Marron further noted defendant had numerous prior convictions for violent acts. He opined a community-based disposition was not appropriate for defendant. Patti testified Greg was in the intensive care unit on life support with traumatic brain injuries, broken ribs, and other injuries for three weeks after the incident and spent another two

and a half months in the hospital. In November 2019, Greg was taken to the Danville Care Center because he could not care for himself.

¶ 26 In his argument, the prosecutor requested a seven-year sentence for both counts and the imposition of discretionary consecutive sentences under section 5-8-4(c)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(c)(1) (West 2018)). He argued the charges were based on two separate and distinct acts. Defendant requested probation and noted he did not intend to hurt Greg. The trial court found defendant was a danger to the public and sentenced him to consecutive seven-year prison terms.

¶ 27 On December 28, 2020, defendant filed his timely notice of appeal in compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017), which stated he was only appealing his sentences. On January 4, 2020, defendant filed a timely amended notice of appeal, challenging both his convictions and sentences. Ill. S. Ct. Rs. 303(b)(5), 606(d) (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's convictions and sentences under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 28                                    II. ANALYSIS

¶ 29                          A. Speedy Trial Violation

¶ 30 Defendant first asserts his statutory right to a speedy trial provided by section 103-5(a) of the Procedure Code (725 ILCS 5/103-5(a) (West 2018)) was violated. He argues the State's aggravated domestic battery charges in this case were subject to compulsory joinder with the aggravated battery charge filed in case 72 and the aggravated domestic battery charges were filed outside the applicable 120-day term. The State asserts defendant has forfeited this argument for failing to file a motion to discharge before trial. In reply, defendant contends this court should not apply forfeiture because a motion would have been futile, and in the alternative,

- 11 -

he seeks review under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)).

¶ 31                                      1. *Forfeiture*

¶ 32        Our supreme court has instructed "one of the two most important tasks of an appellate court panel when beginning the review of a case *** is to determine which issue or issues, if any, have been forfeited." *People v. Smith*, 228 Ill. 2d 95, 106, 885 N.E.2d 1053, 1059 (2008). It is well-established that, to preserve errors for review, the defendant must (1) object to an alleged error at trial *and* (2) raise the alleged error in a posttrial motion to avoid forfeiture of the issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). In this case, defendant did not file a posttrial motion.

¶ 33        Additionally, as argued by the State, section 114-1 of the Procedure Code addresses motions to dismiss criminal charges and lists the failure to place defendant on trial in compliance with section 103-5 as one of the grounds for a motion to dismiss. 725 ILCS 5/114-1(a)(1) (West 2018). Section 114-1(b) of the Procedure Code (725 ILCS 5/114-1(b) (West 2018)) then provides grounds not raised in a timely filed motion to dismiss are waived (two exceptions are listed but are inapplicable here). Thus, section 114-1 specifically provides a defendant forfeits the claim of a violation of the provisions of section 103-5 of the Procedure Code related to a speedy trial unless the defendant files a motion for discharge prior to trial. *People v. Pearson*, 88 Ill. 2d 210, 217, 430 N.E.2d 990, 993 (1981). Additionally, supreme court decisions have long held the defendant's right to discharge granted by the statute is forfeited if not asserted by the defendant prior to conviction. *Pearson*, 88 Ill. 2d at 216, 430 N.E.2d at 992. Here, defendant did not file a motion to discharge.

¶ 34        In his reply brief, defendant first asserts a motion to discharge would have been futile given the trial court's statements regarding speedy trial calculations and cites *People v.*

*Davis*, 378 Ill. App. 3d 1, 880 N.E.2d 1046 (2007). In *Davis*, 378 Ill. App. 3d at 10, 880 N.E.2d at 1054, the reviewing court noted the waiver rule is relaxed when the objection is to the circuit court's own conduct because the objection would have fallen on deaf ears. There, the reviewing court declined to relax the waiver rule because an objection would not have been a criticism of the court's decision and no reason was shown a request to clarify the defendant's answer would have fallen on deaf ears. *Davis*, 378 Ill. App. 3d at 10-11, 880 N.E.2d at 1055.

¶ 35     Here, defendant, who was *pro se*, was asking the trial court questions about his speedy trial term, and the court was responding. While the answers may not all have been legally correct, a motion to discharge would not have been directed at the court's conduct as in *Davis*. If defendant had filed a motion to discharge, then the State would have had an opportunity to reply, and the trial court could have further examined the issue. Nothing suggests the trial court would not have reconsidered the statements it made in court if it had the benefit of legal research. Thus, we disagree a motion to discharge would have necessarily been futile in this instance. Accordingly, we agree with the State defendant forfeited this issue.

¶ 36     Defendant further contends, if we find forfeiture, this court should review the issue under the plain-error doctrine. See *People v. Hartfield*, 2022 IL 126729, ¶ 33 (addressing the first step of the plain-error analysis where the defendant did not file a pretrial motion raising a speedy-trial violation and did not raise the matter in a posttrial motion). The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred

- 13 -

and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

We begin a plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189, 940 N.E.2d at 1059. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). If the defendant fails to meet his or her burden of persuasion, the reviewing court applies the procedural default. *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187. Accordingly, we address whether a statutory speedy-trial violation occurred.

¶ 37                                2. *Statutory Speedy Trial*

¶ 38            This court reviews *de novo* the ultimate determination of whether a defendant's constitutional speedy-trial right has been violated. *People v. Crane*, 195 Ill. 2d 42, 52, 743 N.E.2d 555, 562 (2001). Under the speedy trial statute, a defendant in custody must be tried within 120 days from the date he or she was taken into custody "unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2018). Whenever the defendant causes a period of delay or otherwise agrees to a delay, the 120-day speedy trial period is tolled. *People v. Woodrum*, 223 Ill. 2d 286, 299, 860 N.E.2d 259, 269 (2006). The speedy-trial analysis "becomes more complicated when [the] defendant is charged with multiple, but factually related, offenses at different times." *People v. Williams*, 204 Ill. 2d 191, 198, 788 N.E.2d 1126, 1131 (2003). In those cases, "the speedy-trial guarantee is tempered by compulsory joinder

- 14 -

principles."  *Williams*, 204 Ill. 2d at 198, 788 N.E.2d at 1131.

¶ 39　　　　　The compulsory joinder statute provides, in pertinent part, the following:

"If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c) [(where the court may order a separate trial in the interest of justice)], if they are based on the same act."  720 ILCS 5/3-3(b) (West 2018).

However, the compulsory joinder statute does not apply to "the situation in which several offenses—either repeated violations of the same statutory provision or violations of different provisions—arise from a series of acts which are closely related with respect to the offender's single purpose or plan."  (Internal quotation marks omitted.)  *Williams*, 204 Ill. 2d at 199, 788 N.E.2d at 1132.  Likewise, the "same act" language does not include independent acts, which constitute different offenses where the multiple offenses arise from a series of related acts. *Williams*, 204 Ill. 2d at 199, 788 N.E.2d at 1132.

¶ 40　　　　　The State asserts the compulsory joinder statute does not apply because defendant cannot establish (1) the facts for the aggravated domestic battery charges were known to the prosecutor at the time of the commencement of the prosecution and (2) the aggravated domestic battery charges were based on the same act as the original charge.  Regarding the first issue, the compulsory joinder statute requires "the several offenses are *known* to the proper prosecuting officer at the time of commencing the prosecution."  (Emphasis added.)  720 ILCS 5/3-3(b) (West 2018).  The "knowledge" requirement provides a fairly high threshold to trigger compulsory joinder.  *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 72, 988 N.E.2d 943. Illinois courts have defined "knowledge" or "known to the proper prosecuting officer" as "the

conscious awareness of evidence that is sufficient to give the State a reasonable chance to secure a conviction." *Luciano*, 2013 IL App (2d) 110792, ¶ 78. "When the State has that awareness necessarily defies universal definition, and thus it must be determined on a case-by-case basis." *Luciano*, 2013 IL App (2d) 110792, ¶ 78. Additionally, the prosecution's discretion "should be considered when evaluating the State's knowledge of the evidence and facts for purposes of determining whether a later charge was subject to compulsory joinder with the original charge." *Luciano*, 2013 IL App (2d) 110792, ¶ 75.

¶ 41 Defendant notes that, five days after the altercation, he told investigating officers about the nature of his relationship with Greg and the fact he struck Greg in the face and stomped on him. That interview was three weeks before the State filed the original aggravated battery charge on September 27, 2019. The State asserts the record is silent as to whether the proper prosecuting officer was consciously aware of defendant's statements in the police interview when the original charge was filed. Defendant disagrees the record is silent and notes Police Officer Brandon Ryan's testimony at the September 30, 2019, preliminary hearing on the original aggravated battery charge. There, the prosecutor asked Officer Ryan, if during his investigation, he was told defendant and Greg were in "a dating relationship of sorts." The prosecutor also asked Officer Ryan about the conversation between Sergeant Yates and defendant at the county jail. Officer Ryan testified defendant demonstrated to Sergeant Yates how he stomped on Greg when he was on the ground and struck Greg's head during the altercation. The body camera recording of Sergeant Yates's conversation with defendant on September 6, 2019, was played for the jury at defendant's trial and was the State's sole evidence of a dating relationship between defendant and Greg. Given the prosecutor was aware at the preliminary hearing of Sergeant Yates's discussion with defendant and the relationship between

defendant and Greg, we find the prosecutor did have conscious awareness of evidence which in the prosecutor's view was sufficient to give the State a reasonable chance to secure a conviction for aggravated domestic battery.

¶ 42 Regarding the same act, the State contends defendant did not establish both charges of aggravated domestic battery were the same act as striking the victim about the head and body, which was alleged in the initial information. We disagree. When an incident consists of multiple, separate acts, Illinois courts look to the charging instrument to determine whether the defendant can be convicted of and sentenced on multiple offenses. See *People v. Crespo*, 203 Ill. 2d 335, 343-45, 788 N.E.2d 1117, 1122-23 (2001). If the State charges the incident as a collective act, our supreme court has held the State cannot argue after trial the multiple physical actions support multiple convictions. *Crespo*, 203 Ill. 2d at 343-45, 788 N.E.2d at 1122-23. As in *Crespo*, we examine the original aggravated battery charge and find the State charged the attack on Greg as a collective act, which would include defendant striking Greg with his hand and with his foot. As defendant notes, the prosecutor at the preliminary hearing on the original charge used both "stomp" and "strike" to describe defendant's use of his foot to make contact with Greg's body. Thus, we find the aggravated domestic battery charges were based on the same act as the original aggravated battery charge and the compulsory joinder statute applies.

¶ 43 When criminal charges are required to be brought in a single prosecution, the speedy-trial period begins to run when the defendant is in custody on the original charge, even if the State brings some of the charges at a later date. See *People v. Quigley*, 183 Ill. 2d 1, 13, 697 N.E.2d 735, 741 (1998) (addressing the 160-day term under section 103-5(b)). In other words, the new and additional charges are subject to the same statutory limitation applicable to the original charges. *Williams*, 204 Ill. 2d at 201, 788 N.E.2d at 1133. "Continuances obtained in

connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." (Internal quotation marks omitted.) *Williams*, 204 Ill. 2d at 201, 788 N.E.2d at 1133. However, the aforementioned rule does not apply if the original charging instrument gives a defendant adequate notice of the subsequent charges because the defendant's ability to prepare for trial on those charges is not hindered in any way by the subsequent charges. *People v. Phipps*, 238 Ill. 2d 54, 67-68, 933 N.E.2d 1186, 1194 (2010). The State does not challenge defendant's argument the above exception to the rule in *Williams* is inapplicable to the subsequent charges in defendant's case. As such, we do not address the exception and find the *Williams* rule applies in this case.

¶ 44        Here, the State filed the subsequent charges more than nine months after the original charge. The State does not challenge defendant's explanation of how the 120-day period expired before the trial court granted the State an extension of the speedy-trial term in case 72 in January 2020. Since the delay attributable to defendant with the original charge is not applicable to the subsequent charges under the rule in *Williams*, the 120-day speedy trial period for the subsequent charges had expired well before the State filed them. Accordingly, defendant's *statutory* speedy trial right was violated.

¶ 45                                    3. *Plain Error*

¶ 46        Since we have found an error, we address whether the error constitutes plain error. As stated, defendant bears the burden of proving plain error. *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187. He asserts second-prong plain error and, thus, must show the error was so serious it affected the fairness of his trial and challenged the integrity of the judicial process. Defendant's entire plain-error argument is the following:

"As a result, this Court should review for plain error as [defendant] established both that clear and obvious error occurred and the circuit court's speedy-trial error affected the fairness of his trial and challenged the integrity of the judicial process. (Opening Brief, p. 14-25). See Ill. S. Ct. R. 615(a); *People v. Smith*, 2016 IL App (3d) 140235, ¶ 10 (noting that where a defendant failed to properly preserve a speedy-trial matter for review, it is reviewable for plain error because it implicates fundamental constitutional concerns); *McKinney*, 2011 IL Ap (1st) 100317, ¶ 29."

Defendant did not assert plain error in his opening brief.

¶ 47 Our supreme court recently addressed a statutory speedy-trial claim and noted the following: "The people of Illinois possess both constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2020). Although Illinois's speedy trial statutes implement the constitutional right, the statutory and constitutional rights are *not coextensive*." (Emphasis added.) *Hartfield*, 2022 IL 126729, ¶ 32. In this case, defendant only claims a statutory violation.

¶ 48 Our supreme court has yet to address whether a statutory speedy-trial violation can constitute second-prong plain error. See *People v. Staake*, 2017 IL 121755, ¶ 33, 102 N.E.3d 217 (finding it unnecessary in that case to determine whether the appellate court precedent finding a forfeited error involving a statutory speedy-trial violation is reviewable as second-prong plain error should be overruled). In the appellate court cases cited by defendant, the courts found second-prong plain error based on a statutory speedy-trial violation with no analysis. See *People v. Smith*, 2016 IL App (3d) 140235, ¶¶ 10, 21, 55 N.E.3d 719 (citing *People v. McKinney*, 2011 IL App (1st) 100317, 962 N.E.2d 1084, and simply restating what constitutes

- 19 -

second-prong plain error); *McKinney*, 2011 IL App (1st) 100317, ¶¶ 29, 31 (finding no error and simply citing *People v. Gay*, 376 Ill. App. 3d 796, 799, 878 N.E.2d 805, 808 (2007), for the principle a statutory violation is second-prong plain error). In *Gay*, 376 Ill. App. 3d at 799, 801, 878 N.E.2d at 808, 810, the reviewing court found no error but noted it was reviewing the issue under the plain-error doctrine because "a speedy trial is a substantial, fundamental right (*People v. Crane*, 195 Ill. 2d 42, 46, 743 N.E.2d 555, 559 (2001))." Our supreme court's decision in *Crane* involved only the issue of whether the defendant's constitutional speedy-trial right had been violated. *Crane,* 195 Ill. 2d at 48-49, 743 N.E.2d at 560. Thus, the cases defendant cited do not establish the proposition any statutory speedy trial violation constitutes second-prong plain error.

¶ 49    In this case, the State did not have an opportunity to respond to defendant's plain error argument because defendant raised it in his reply brief. However, in *Staake*, 2017 IL 121755, ¶ 32, the State challenged the assertion all statutory speedy-trial violations are second-prong plain error. The State pointed out the constitutional and statutory rights to a speedy trial are not coextensive. It further noted the legislature, having created the statutory speedy-trial right, also took that right away from the defendant for failure to timely raise it, *i.e.*, deeming it "waived" in the words of the statute. Last, the State urged only a speedy-trial claim rising to a constitutional dimension may be subject to second-prong plain error review.

¶ 50    Our supreme court has explained the plain error doctrine as follows:

> "The plain-error doctrine is not a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court. [Citation.] Instead, it is a narrow and limited exception to the general rule of forfeiture, whose purpose is to protect the rights

of the defendant and the integrity and reputation of the judicial process." (Internal quotation marks omitted.) *People v. Allen*, 222 Ill. 2d 340, 353, 856 N.E.2d 349, 356 (2006).

Moreover, under the second prong of the doctrine, "even constitutional errors can be forfeited [citation] if the error is not of such magnitude that it deprives the defendant of a fair trial." *Allen*, 222 Ill. 2d at 352, 856 N.E.2d at 356.

¶ 51          As noted earlier in our analysis, the legislature has provided for the forfeiture of a statutory speedy-trial violation if the violation is not timely raised. See 725 ILCS 5/114-1(b) (West 2018). Thus, a statutory speedy-trial violation does not alone result in an unfair trial or challenge the integrity of the judicial process. If it did, then the legislature would not have provided for its forfeiture. As such, a defendant must demonstrate his statutory speedy-trial violation deprived him of a fair trial or challenged the integrity of the judicial process to establish second-prong plain error. Defendant's very brief plain error argument does not establish that. Since defendant did not meet his burden, we apply the doctrine of forfeiture.

¶ 52                                    B. Right to Counsel

¶ 53          Defendant next asserts his right to counsel was violated because he did not knowingly waive the right because the circuit court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). The State suggests the trial court did substantially comply with the rule and defendant was not prejudiced by any error. This court reviews *de novo* compliance with a supreme court rule. *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 26, 147 N.E.3d 912.

¶ 54          Like the speedy-trial violation, defendant did not raise this issue in a posttrial motion. In his reply brief, defendant contends the State forfeited any claim of defendant's

forfeiture by failing to raise it. See *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 29, 170 N.E.3d 1014. Regardless of whether defendant preserved the error for review or whether plain-error review is appropriate, the initial inquiry is whether an error occurred. See *Hartfield*, 2022 IL 126729, ¶ 33 (finding no error instead of addressing forfeiture or the appropriateness of plain-error review).

¶ 55 The sixth amendment to the United States Constitution (U.S. Const., amend. VI) "guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel." *People v. Haynes*, 174 Ill. 2d 204, 235, 673 N.E.2d 318, 332 (1996). Rule 401(a) sets forth procedures for the waiver of the right to counsel and provides the following:

> "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> > (1) the nature of the charge;
> >
> > (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
> >
> > (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

Rule 401's purpose is "to ensure that a waiver of counsel is knowingly and intelligently made."

(Internal quotation marks omitted.)  *People v. Reese*, 2017 IL 120011, ¶ 62, 102 N.E.3d 126. However, strict, technical compliance with Rule 401 is not always required.  *Reese*, 2017 IL 120011, ¶ 62.  "Substantial compliance is sufficient for a valid waiver of counsel if the record indicates the waiver was made knowingly and intelligently and the trial court's admonishment did not prejudice the defendant's rights."  *Reese*, 2017 IL 120011, ¶ 62.  As defendant notes, compliance with Rule 401 is examined based on the information provided to the defendant before his or her waiver.  *People v. Span*, 2021 IL App (2d) 180966, ¶ 19, 185 N.E.3d 311.  This court assesses each waiver of counsel on its own particular facts.  *Reese*, 2017 IL 120011, ¶ 62. Defendant asserts the trial court erred by (1) informing him he was eligible for extended-term sentencing, (2) stating the wrong term of mandatory supervised release (MSR), and (3) failing to state defendant could receive consecutive sentences.

¶ 56        In *Reese*, 2017 IL 120011, ¶ 64, the defendant argued the trial court failed to provide sufficient Rule 401(a) admonitions because the court did not state defendant's sentences would run consecutively to his existing natural-life sentence for murder.  There, the defendant was informed "he was facing 'massive time' if convicted of even some of the charged offenses in [the] case."  *Reese*, 2017 IL 120011, ¶ 64.  Specifically, the trial court told defendant the maximum sentence was 160 years' imprisonment on two of the charges alone.  *Reese*, 2017 IL 120011, ¶ 64.  The supreme court did not see how informing the defendant the potential 160-year sentence in this case would also be served consecutively to his natural-life sentence for murder could have affected his decision on whether to waive counsel and proceed *pro se*.  *Reese*, 2017 IL 120011, ¶ 64.  It found the record showed the defendant's waiver of counsel was made knowingly and intelligently and the admonitions did not prejudice the defendant's rights.  *Reese*, 2017 IL 120011, ¶ 65.  As such, the supreme court concluded the defendant's waiver of counsel

- 23 -

was valid, and the defendant had not established a clear or obvious error.

¶ 57 Defendant cites *People v. Bahrs*, 2013 IL App (4th) 110903, ¶ 14, 988 N.E.2d 773, where this court concluded the trial court failed to comply with Rule 401(a)(2). We found the trial court did not inform defendant of the true maximum penalty he faced because it did not tell the defendant a prison sentence for aggravated fleeing would run consecutively to the other two prison terms. *Bahrs*, 2013 IL App (4th) 110903, ¶ 14. We explained that, with concurrent sentences, the maximum penalty the defendant would have faced was only 30 years' imprisonment plus mandatory supervised release. *Bahrs*, 2013 IL App (4th) 110903, ¶ 14. However, if the prison term for aggravated fleeing had to run consecutively to the other 2 prison terms, the maximum penalty defendant would have faced was 33 years' imprisonment plus mandatory supervised release. *Bahrs*, 2013 IL App (4th) 110903, ¶ 14. Thus, the consecutive nature of the aggravated fleeing sentence made a difference in defendant's exposure. *Bahrs*, 2013 IL App (4th) 110903, ¶ 14. We noted a trial court's understating the maximum penalty does not satisfy Rule 401(a), "except, perhaps, in the unusual case in which the defendant has such a high degree of legal expertise that one may confidently assume he or she already knows the maximum penalty." *Bahrs*, 2013 IL App (4th) 110903, ¶ 15. As such, the trial court's admonitions regarding the maximum penalty must be accurate and complete, which includes informing the defendant of the consecutive running of any prison term. *Bahrs*, 2013 IL App (4th) 110903, ¶ 15.

¶ 58 First, the information provided to the trial court at the time of the Rule 401(a) admonishments did indicate defendant was extended-term eligible. The error in the LEADS sheet for defendant was not discovered until after defendant's trial had begun. Second, the court's MSR admonishment was greater than what the actual MSR term was. Defendant cites no

cases indicating a greater maximum term is prejudicial to the defendant in waiving his right to counsel. Third, while the trial court did not admonish defendant it had the discretion to impose consecutive sentences, the court did admonish defendant he could receive a prison sentence of up to 14 years. The court again admonished defendant at the beginning of trial he could receive up to a 14-year prison term due to extended-term sentencing. The record is clear defendant understood he could receive a 14-year sentence before his trial began, and defendant still chose to represent himself. In this case, the court informed defendant multiple times of his true maximum penalty when it informed him of a possible prison term of up to 14 years. Thus, this case is distinguishable from *Bahrs*, where the defendant could have received a sentence beyond the admonished maximum due to consecutive sentencing.

¶ 59 Additionally, given defendant chose to proceed *pro se* knowing he faced a prison term of up to 14 years, we fail to see how an admonishment informing defendant he faced a maximum of 7 years' imprisonment on each count and the two counts could be consecutive would have affected his decision to proceed *pro se*. Defendant's counsel suggests defendant may have found it unlikely he would receive an extended-term sentence when deciding to proceed *pro se* given he was aware he did not have a prior residential burglary conviction. However, defendant indicated multiple times he understood he could receive a prison term of 14 years and did not give any indication he believed he was not subject to extended-term sentencing. Here, defendant had knowledge he could receive a 14-year prison term when he waived his right to counsel at arraignment and before trial. As such, his ultimate 14-year sentence was not prejudicial. On the facts of this case, we find the trial court substantially complied with Rule 401(a), and thus defendant's waiver of counsel was valid.

¶ 60 Defendant further asserts the trial court should have admonished him again under

Rule 401(a) before it proceeded to sentencing. Citing *People v. Simpson*, 172 Ill. 2d 117, 138, 665 N.E.2d 1228, 1239 (1996), defendant notes the "continuing waiver" rule, which provides an intelligently and knowingly made waiver of counsel applies to all phases of trial, except for "significantly changed circumstances or a later request for counsel." The supreme court noted, "Circumstances requiring readmonishment before sentencing include lengthy delays between trial phases, newly discovered evidence which might require or justify advice of counsel, new charges brought, or a request from defendant." *Simpson*, 172 Ill. 2d at 138, 665 N.E.2d at 1239. However, as previously explained, the change in circumstances, which was the discovery defendant was not extended-term eligible, did not alter the true maximum penalty defendant was facing. Defendant fails to assert how the court correctly explaining the details of why he could receive up to a sentence of 14 years' imprisonment would have affected his decision to proceed *pro se*. Defendant did not give any indication he wanted counsel's assistance at sentencing.

¶ 61        Accordingly, we find defendant's right to counsel was not violated.

¶ 62                        C. Sufficiency of the Evidence

¶ 63        Defendant contends the State's evidence was insufficient to prove beyond a reasonable doubt he committed the offense of aggravated domestic battery because the State failed to establish Greg was defendant's family or household member. The State asserts its evidence was sufficient. A defendant may raise a challenge to the sufficiency of the evidence for the first time on appeal. *People v. Carter*, 2021 IL 125954, ¶ 41. Our supreme court has set forth the following standard of review for insufficiency of the evidence claims:

> "It is well settled that, when reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. [Citation.] All reasonable inferences from the evidence must be drawn in favor of the prosecution. [Citation.] This court will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Cline*, 2022 IL 126383, ¶ 25.

¶ 64 Section 12-0.1 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-0.1 (West 2018) provides, in pertinent part, the following:

" 'Family or household members' include *** persons who have or have had a dating or engagement relationship ***. For purposes of this Article, neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts shall be deemed to constitute a dating relationship."

The statute does not provide any further guidance on determining whether two individuals are in a dating relationship, but numerous appellate court decisions have addressed the issue. As the appellate court has previously recognized, a potential difficulty with this term might arise when a relationship is new because "[s]ome people might define one date as a 'dating relationship,' while others may not do so until after several dates." *People v. Johnson*, 341 Ill. App. 3d 583, 588, 793 N.E.2d 774, 778 (2003). However, Illinois courts have found one date is insufficient to establish a dating relationship. See *Alison C. v. Westcott*, 343 Ill. App. 3d 648, 653, 798 N.E.2d 813, 817 (2003); *People v. Young*, 362 Ill. App. 3d 843, 845, 852, 840 N.E.2d 825, 827, 832 (2005). Moreover, a reviewing court has found evidence of the defendant and the victim having numerous sexual encounters insufficient to show the defendant and the victim had a dating relationship. *People v. Howard*, 2012 IL App (3d) 100925, ¶ 10, 970 N.E.2d 63.

¶ 65        Illinois courts have defined a dating relationship as a " 'serious courtship': 'at a minimum, an established relationship with a significant romantic focus.' " *People v. Allen*, 2020 IL App (2d) 180473, ¶ 21, 161 N.E.3d 1201 (quoting *Young*, 362 Ill. App. 3d at 851, 840 N.E.2d at 832). "Romantic" is to be interpreted broadly, "encompass[ing] relationships that are 'romantic' in a conventional sense *and* those that are mainly sexual." (Emphasis in the original.) *Allen*, 2020 IL App (2d) 180473, ¶ 21. For a dating relationship to exist, a "degree of romantic reciprocity" must be present, but "complete reciprocity of interest" is not required. *Allen*, 2020 IL App (2d) 180473, ¶¶ 21-22. For example, a dating relationship may exist if "one party is seeking sex and the other a chocolate-and-flowers romance." *Allen*, 2020 IL App (2d) 180473, ¶ 22.

¶ 66        In *Allen*, 2020 IL App (2d) 180473, ¶ 23, the reviewing court concluded the State's evidence was sufficient for a reasonable trier of fact to find the defendant was in a "dating relationship" as defined in section 12-0.1. In reaching that conclusion, the court noted the defendant's suggestion, the victim wanted a "boyfriend" and he wanted sex, did not preclude the pair from having a dating relationship. *Allen*, 2020 IL App (2d) 180473, ¶ 23. Moreover, the victim testified she and defendant not only met to have sex but also regularly ate together and watched movies at the defendant's house. *Allen*, 2020 IL App (2d) 180473, ¶ 23. They "had done so 'on and off' for about eight months." *Allen*, 2020 IL App (2d) 180473, ¶ 23.

¶ 67        Here, the evidence at trial showed defendant met Greg on Tuesday morning at a friend's home. They both spent Tuesday night at the friend's home, and on Wednesday morning, they went to defendant's apartment where they engaged in sexual activity. Greg then left defendant's apartment. The two got together later in the day on Wednesday with friends, and two of the friends were jealous of defendant and Greg being all over each other. Defendant's

explanation is unclear about whether he and Greg spent Wednesday night together at the friend's residence. Greg then came over to defendant's apartment on Saturday. They were drinking together and were planning on going out to a bar when the incident occurred.

¶ 68 Unlike in *Allen*, defendant and Greg had only known each other for five days and had only one sexual encounter. They never spent the night together at one of their residences. Moreover, the State presented no evidence defendant and Greg referred to each other as boyfriend or considered the other one to be a boyfriend. Given the pair had only known each for a very short period of time, did not even see each other every day during that brief period, and had only one sexual encounter, we agree with defendant the State's evidence is insufficient for a rational trier of fact to have found beyond a reasonable doubt a dating relationship existed between defendant and Greg.

¶ 69 Given the insufficient evidence, defendant cannot be convicted of the Class 2 felony of aggravated domestic battery, and thus we reduce defendant's convictions to the Class 3 felony of aggravated battery. See *Howard*, 2012 IL App (3d) 100925, ¶ 11. Defendant's seven-year sentences are greater than the sentencing range for a Class 3 felony (730 ILCS 5/5-4.5-40(a) (West 2018)), and thus we remand the case to the circuit court for resentencing. We find no merit in defendant's request for the sentencing hearing to be before a different judge.

¶ 70                                    D. Right to Remain Silent

¶ 71 Defendant last asserts his right to remain silent was violated because the trial court ordered him to cooperate with the preparation of the presentence investigation report, despite defendant's desire to proceed directly to sentencing without the presentence investigation report. The State then presented some of the information obtained from defendant in aggravation at defendant's sentencing hearing. The State asserts defendant forfeited this claim by not raising

an objection in the trial court and in a motion to reconsider sentence. It further argues defendant cannot establish plain error because the trial court did not order defendant to cooperate with the probation department. In his reply brief, defendant seeks review under the plain-error doctrine and points out every argument the State failed to make. However, as previously stated, it is defendant who bears the burden of proving plain error, and the State's argument was anticipatory of the argument defendant did not make in his initial brief, despite the obvious forfeiture of the issue. Regardless, we agree with the State the trial court did not err.

¶ 72        In support of his argument, defendant cites *People v. Woods*, 2018 IL App (1st) 153323, ¶ 37, 140 N.E.3d 798, where the reviewing court found second-prong plain error based on the trial court insisting the defendant cooperate with the presentence investigation report and then using that information against him. There, the defendant was specifically told by the trial court he had to talk to pretrial services after the defendant had previously declined to answer any questions for the initial presentence investigation report. *Woods*, 2018 IL App (1st) 153323, ¶ 9. After the court's instruction, the defendant completed an interview for a new presentence investigation report, which was filed with the trial court. *Woods*, 2018 IL App (1st) 153323, ¶ 10. The reviewing court noted the trial court appeared to have taken only a negative view of information in the new presentence investigation report, which could have also been viewed as mitigating. *Woods*, 2018 IL App (1st) 153323, ¶ 35.

¶ 73        Here, after the jury verdict, the trial court indicated it believed a presentence investigation report should be ordered and asked if either party objected. The State answered in the negative. Defendant did not answer. The court then explained to defendant what a presentence investigation report was and then asked how much time was needed for sentencing. Defendant then noted that same day would work, if possible. The court noted that was not

possible because the court ordered a presentence investigation report. The State responded two hours, and defendant then asked whether it was two hours that day. The court again noted it had ordered a presentence investigation report and the report needed to be prepared for sentencing. The court stated a possible date for the sentencing hearing, and the State agreed with it. The court then stated to defendant, "I would admonish you that you want to cooperate with the Court Services as to the pre-sentence investigation."

¶ 74    While defendant wanted to have the sentencing hearing the same day as his trial, he did not expressly refuse to participate in a presentence investigation report like the defendant in *Woods*. We disagree with defendant the record indicates defendant clearly did not want to participate in the preparation of the presentence investigation report. Defendant did not make an objection when the court asked if there was any objection to its ordering a presentence investigation report. The only clear thing is defendant desired to have a sentencing hearing that day. Moreover, the court did not order defendant to cooperate with the presentence investigation like in *Woods*, but instead suggested defendant should want to cooperate with the presentence investigation report. Defendant takes issue with the court's failure to warn him anything he said during the presentence investigation could be used against him. However, it was defendant who chose to proceed without counsel, and counsel could have explained the positive and negatives of participating in the presentence investigation report.

¶ 75    Accordingly, we find defendant's right to remain silent was not violated.

¶ 76                              III. CONCLUSION

¶ 77    For the reasons stated, we reverse defendant's convictions for aggravated domestic battery and remand the cause to the Ford County circuit court for sentencing on two counts of aggravated battery. The circuit court's judgment is affirmed in all other respects.

¶ 78        Affirmed in part and reversed in part.

¶ 79        Cause remanded.