# Illinois Official Reports

## Supreme Court

> ### *People v. Marcum*, 2024 IL 128687

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CLAYTON T. MARCUM, Appellant. |
| Docket No. | 128687 |
| Filed | March 21, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Ford County, the Hon. Matthew J. Fitton, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Cause remanded. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Catherine K. Hart, Deputy Defender, and Edward J. Wittrig, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.<br><br>Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Clayton T. Marcum, was convicted in the circuit court of Ford County of two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2018)). Defendant was sentenced to consecutive prison terms of seven years on each count. Defendant appealed, arguing that his right to a speedy trial had been violated, he did not knowingly waive his right to counsel, the State failed to prove him guilty of aggravated domestic battery, and the circuit court violated his right to remain silent when it ordered him to participate in the preparation of his presentence investigation report. 2022 IL App (4th) 200656-U.

¶ 2 The appellate court agreed that the evidence was insufficient to prove defendant guilty of aggravated domestic battery. The appellate court therefore reduced defendant's convictions to Class 3 aggravated batteries and remanded to the trial court for resentencing. The appellate court rejected defendant's remaining arguments. In this court, defendant appeals only his speedy trial and waiver of counsel claim. For the following reasons, we affirm the judgment of the appellate court.

¶ 3 BACKGROUND

¶ 4 On September 1, 2019, police officer Brandon Ryan of the Paxton Police Department received a report of a naked man outside some apartments. When Officer Ryan arrived on the scene, he observed a man, later identified as Greg Rudin, lying in an alley outside the apartments with various injuries. Rudin was taken to a hospital, where he was diagnosed with a subarachnoid hemorrhage and broken ribs.

¶ 5 Bystanders told Officer Ryan that they had seen Rudin with defendant. Officer Ryan then spoke with defendant. Defendant said that he and Rudin drank together at defendant's apartment until Rudin left at 10 p.m. Officer Ryan noted that defendant had dried blood on his clothing. Defendant then clarified that he and Rudin had wrestled and that he assisted Rudin down the stairs. Defendant eventually stated that Rudin fell down the stairs.

¶ 6 Officer Ryan returned to defendant's apartment with a search warrant. Officers found blood on a mattress in the apartment and in a stairwell outside the apartment. Defendant stated that Rudin was bleeding prior to leaving the apartment. The officers arrested defendant on charges of aggravated battery and obstruction of justice.

¶ 7 Five days after defendant's arrest, investigating officers met with defendant at the county jail, where he made a videotaped confession. Defendant told the officers that he met Rudin several days prior to September 1, 2019, and had a sexual encounter with Rudin. On September 1, defendant and Rudin were drinking and began to wrestle and engage in consensual horseplay. Defendant admitted that he struck Rudin while they were wrestling. The wrestling stopped when Rudin began bleeding. Defendant and Rudin then left defendant's apartment to

walk to a bar. While on their way to the bar, Rudin fell down the stairs. Defendant tried to help Rudin walk outside, but Rudin kept falling. When Rudin fell the last time, defendant stomped on Rudin. Defendant told Rudin to stay there, to sleep it off, and to take himself home in the morning.

¶ 8    On September 27, 2019, the State charged defendant with one count of aggravated battery, a Class 3 felony, for striking Rudin on the head and body and knowingly causing Rudin great bodily harm. The information stated that, if defendant was convicted of the charged offense, he could be sentenced to an extended term of 5 to 10 years in prison based upon a prior residential burglary conviction in Iroquois County. The public defender's office was appointed to represent defendant.

¶ 9    At the preliminary hearing on September 30, 2019, Officer Ryan testified that, when he spoke to defendant at the scene, defendant had dried blood on his shirt and jeans. Officer Ryan also testified that, in defendant's videotaped statement following his arrest, defendant admitted that he struck Rudin's head and saw blood coming out of his mouth. Defendant also demonstrated how he stomped on Rudin after he fell. Rudin suffered broken ribs, a punctured lung, and three brain hematomas. Officer Ryan said that Rudin had recently awakened from a coma and was unable to speak. Officer Ryan also testified that he learned during his investigation that defendant and Rudin were in a dating relationship. The trial court found probable cause to support the aggravated battery charge and suggested an October 2019 trial date. Defense counsel objected and, after consulting with defendant, proposed a January 2020 trial date. The trial court granted defendant's request.

¶ 10    Defendant's trial was set for January 6, 2020, but on that date, the circuit court granted the State's motion to extend the speedy trial term by no more than 20 days in order to complete DNA testing, over defendant's objection. The trial court set the trial for April 2020.

¶ 11    At a hearing on March 19, 2020, the State indicated that it had received and provided defense counsel with the DNA test results and that the State was ready for trial. In March 2020, the State also made an offer of an eight-year sentencing cap in exchange for a guilty plea from defendant. After consulting with his attorney, defendant rejected the State's offer. Defendant also stated that he wanted his attorney removed from the case.

¶ 12    On April 13, 2020, the case was continued to July 2020 due to this court's COVID-19 administrative orders. At a May 15, 2020, hearing, defendant again informed the court that he wanted his attorney removed. The trial court continued the case for a hearing on defendant's request. On May 22, 2020, the trial court told defendant the nature of the charge, admonished defendant of his rights under Illinois Supreme Court Rule 401 (eff. July 1, 1984), and discussed with defendant his right to counsel and the consequences of proceeding *pro se*. Defendant affirmed that he wished to proceed *pro se*.

¶ 13    On July 6, 2020, the State dismissed the aggravated battery count and filed a two-count information charging defendant with two counts of aggravated domestic battery, a Class 2 felony. Count I alleged that defendant struck Rudin with his fist, causing a subarachnoid hemorrhage, that defendant caused great bodily harm to Rudin, and that Rudin was defendant's family or household member. Count II alleged that defendant stomped on Rudin with his foot, causing rib fractures, that defendant knowingly caused great bodily harm to Rudin, and that Rudin was defendant's family or household member. Both counts averred that defendant was eligible for extended-term sentencing due to defendant's prior residential burglary conviction.

¶ 14    The new counts proceeded to arraignment. At the arraignment, the trial court read the new information to defendant. The trial court admonished defendant that he was facing a sentence of 7 to 14 years on each charge, rather than the usual sentence of 3 to 7 years, due to his prior residential burglary conviction. The trial court also informed defendant that a mandatory supervised release (MSR) term would be added to any prison sentence and that probation and conditional discharge were available sentences. Defendant sought clarification of the charges. The trial court repeated the charges and the possible penalties and also told defendant that he would need to serve 85% of any prison sentence and would be ineligible for day-for-day credit. Defendant responded that he understood.

¶ 15    The trial court then confirmed that defendant still wished to represent himself. The trial court asked defendant if he understood the charges; defendant responded, "Yeah." The trial court then asked defendant if he understood the minimum and maximum penalties, including extended-term eligibility, the MSR range, and the applicable financial obligations. Defendant responded, "Uh-huh." The trial court next told defendant that he had the right to represent himself but that counsel could be appointed for him if he was indigent. When asked if he understood that, defendant said "Yeah." The trial court asked defendant if he wished to waive his right to counsel, and the defendant said he did.

¶ 16    Defendant then asked the court about spending 120 days in custody and whether the speedy trial limitation was "completely out the window." The trial court stated that the speedy trial limitation was tolled by this court's COVID-19 order. Defendant responded, "So I have to start all over again? Like be here, like be here over a year ago or three more months or four more months?" The trial court answered that defendant's case was continued by agreement and due to COVID-19. Defendant replied, "[y]ou can see I been here for about a year, and this ain't a murder charge. I been here for about a year." The trial court again responded that the case was continued by agreement and that the speedy trial period starts over every time the case is continued by agreement. Defendant asked the court if there were "anymore curve balls I need to be aware of?" The trial court denied there was a curve ball and informed defendant that the State simply "elected to file a different charge."

¶ 17    A preliminary hearing on the new charges was held on August 4, 2020. Officer Ryan testified consistently with his testimony at the prior preliminary hearing. Officer Ryan also told the court that Rudin was now confined to an assisted living facility, was unable to care for himself, and would require assistance for the rest of his life. The trial court found probable cause to support the charges and set defendant's trial for October 2020. Defendant then indicated that he was confused concerning the nature of the charges, asking "is this still aggravated battery with intent at any time to do bodily harm?" The trial court responded that the charge was "a straight domestic battery, which is a Class 2."[1]

¶ 18    Prior to jury selection, the trial court again asked defendant if he understood the nature of the charges, what he was charged with, and the possible penalties for those charges. The defendant acknowledged he was charged with aggravated domestic battery. The trial court clarified that defendant was charged with two counts of aggravated domestic battery. The trial court also confirmed that defendant knew he was facing a sentence of 7 to 14 years. Defendant then asked the court if he "would be charged with two charges" if he was found guilty. The

_____

[1]The charges were aggravated domestic battery.

- 4 -

prosecutor responded that, if defendant was found guilty, he was "going to be sentenced to one sentence." The trial court then stated, "[y]ou will not be sentenced twice." Defendant replied, "Oh, so I would be looking at seven to 14 years?" The trial court answered, "[y]es." After further admonishments from the trial court, defendant reaffirmed that he wished to proceed *pro se*.

¶ 19    On the last day of trial, the prosecutor informed the court that there was an error in the Law Enforcement Agencies Data System (LEADS) sheet concerning defendant. The prosecutor determined that the residential burglary charge listed under defendant's name was not defendant's case. Defendant confirmed that he had never been convicted of residential burglary. The prosecutor told the court that defendant was no longer subject to extended-term sentencing but rather faced a sentencing range of three to seven years' imprisonment.

¶ 20    At the close of trial, the jury found defendant guilty of both counts of aggravated domestic battery. At defendant's sentencing hearing, the State asked that defendant's sentences be served consecutively. When defendant asked what that meant, the trial court explained that the State was asking for two separate terms of seven years, to be served one after the other. Defendant responded, "[l]ike 14 years?" The trial court confirmed it was 14 years. Following the sentencing hearing, the trial court sentenced defendant to a seven-year prison term on each conviction, to be served consecutively. Defendant did not file a posttrial motion.

¶ 21    On appeal, the appellate court agreed with defendant that the evidence was insufficient for a rational trier of fact to have found beyond a reasonable doubt that defendant was in a dating relationship with Rudin. 2022 IL App (4th) 200656-U, ¶ 68. The appellate court therefore reduced defendant's convictions to aggravated battery and remanded the case to the trial court for resentencing. *Id.* ¶ 69. Relevant to the instant appeal, the appellate court found that defendant's statutory right to a speedy trial had been violated but that the error was not subject to plain-error review. *Id.* ¶¶ 44, 51. Accordingly, defendant waived his speedy trial claim when he failed to file a motion for discharge pursuant to section 114-1(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-1(b) (West 2018)). 2022 IL App (4th) 200656-U, ¶ 51. The appellate court also found that defendant knowingly waived his right to counsel. *Id.* ¶¶ 60-61.

¶ 22    This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 23                                      ANALYSIS

¶ 24    On appeal, defendant first argues that, despite correctly finding that the State violated his statutory right to a speedy trial when it filed the aggravated domestic battery charges, the appellate court erred in finding that the violation was not subject to plain-error review. The State does not dispute that defendant's statutory right to a speedy trial was violated but disagrees that the violation is subject to plain-error review.

¶ 25    The people of the State of Illinois possess a constitutional right to a speedy trial under both the United States and the Illinois Constitutions. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Both this court and the United States Supreme Court have recognized that the right to a speedy trial cannot be defined in terms of a precise or absolute standard of time. *Barker v. Wingo*, 407 U.S. 514, 522 (1972); *People v. Henry*, 47 Ill. 2d 312, 316 (1970). Given the imprecise nature of the constitutional right to a speedy trial, the Illinois legislature has

- 5 -

historically provided that an accused in custody shall be tried within a certain time. See *People ex rel. Nagel v. Heider*, 225 Ill. 347, 350 (1907) (statute provided that, with certain exceptions, accused not admitted to bail shall be tried within four months of his date of commitment). The current speedy trial statute is set forth in section 103-5 of the Code (725 ILCS 5/103-5 (West 2020)). Section 103-5(a) provides that, with certain exceptions, "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody." *Id.* § 103-5(a). Section 103-5 implements the constitutional guarantee to a speedy trial; however, the statute is not equivalent to, or coextensive with, the constitutional right to a speedy trial. *People v. Crane*, 195 Ill. 2d 42, 48 (2001).

¶ 26 To claim a violation of the statutory right to a speedy trial, section 114-1 of the Code provides:

"(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

(1) The defendant has not been placed on trial in compliance with Section 103-5 of this Code.

* * *

(b) The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefor *** are waived." 725 ILCS 5/114-1(a)(1), (b) (West 2020).

¶ 27 Defendant concedes that he did not file a pretrial motion to dismiss on statutory speedy trial grounds but argues that this court should review the issue as plain error. It is well settled that a defendant must object at trial and raise a purported error in a posttrial motion in order to preserve the error for review. *People v. Williams*, 2022 IL 126918, ¶ 48. Failure to do either results in forfeiture of the error, but the forfeiture may be excused where the error is plain error. *Id.* Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) memorializes the plain-error doctrine. Rule 615(a) provides, in pertinent part, that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." *Id.*

¶ 28 The plain-error rule does not allow for review of all forfeited errors. *People v. Jackson*, 2022 IL 127256, ¶ 19. A court will review a forfeited error in two circumstances: (1) where the evidence is so closely balanced that the jury's verdict may have resulted from the error and not the evidence or (2) when the error is so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. *Id.* Whether there is plain error is a question of law that this court reviews *de novo*. *Williams*, 2022 IL 126918, ¶ 48.

¶ 29 Defendant argues that the violation of his statutory right to a speedy trial was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. Therefore, defendant maintains that the error may be reviewed under the second prong of the plain-error rule.

¶ 30 This court has not had the opportunity to directly address whether a statutory speedy trial violation constitutes plain error. The argument was raised in both *People v. Staake*, 2017 IL 121755, and *People v. Hartfield*, 2022 IL 126729, but this court found no error occurred in either case and, therefore, did not reach the issue.

- 6 -

¶ 31 This court did discuss section 103-5 in *People v. Pearson*, 88 Ill. 2d 210 (1981), in the context of whether a speedy trial violation may be raised for the first time in a posttrial motion. *Pearson* found that it could not, holding that a motion for discharge for a speedy trial violation must be brought to the trial court's attention before trial, based upon the express language of section 114-1 of the Code. *Id.* at 219. *Pearson* noted that the right conferred by section 103-5 was "not absolute in the sense that the mere passage of time ousts the court of jurisdiction to try the accused and makes his release mandatory." *Id.* at 216. *Pearson* explained that "it was long ago established that the right to discharge granted by the statute was *waived* if not asserted by the defendant prior to conviction." (Emphasis added.) *Id.* Further, section 114-1 specifically provided that a "violation of the provisions of section 103-5 of the Code relating to speedy trial is *waived* unless a motion for discharge is made prior to trial." (Emphasis added.) *Id.* at 217.

¶ 32 Defendant distinguishes *Pearson* on the ground that there was no indication in that case that the defendant invoked the plain-error doctrine to excuse his procedural default. Defendant finds support for his argument in several appellate court decisions holding that a violation of the speedy trial statute qualifies for review under the second prong of plain-error review. See *People v. Mosley*, 2016 IL App (5th) 130223; *People v. Smith*, 2016 IL App (3d) 140235; *People v. McKinney*, 2011 IL App (1st) 100317; *People v. Gay*, 376 Ill. App. 3d 796 (2007).

¶ 33 The appellate court in this case declined to follow the case law cited by defendant. The appellate court pointed out that those decisions lacked any analysis in finding plain error based upon statutory speedy trial violations. 2022 IL App (4th) 200656-U, ¶ 48. The appellate court instead observed that, in section 114-1(b), the legislature provided for the "forfeiture" of a statutory speedy trial violation if the speedy trial violation was not timely raised. *Id.* ¶ 51. The appellate court therefore concluded that, if a statutory speedy trial violation alone constituted plain error, the legislature would not have provided for its waiver in section 114-1(b). *Id.*

¶ 34 At the outset, we note that the appellate court used the terms "waiver" and "forfeiture" interchangeably. Section 114-1(b), however, expressly provides that the right to a speedy trial is *waived* if not filed "within a reasonable time after the defendant has been arraigned." 725 ILCS 5/114-1(b) (West 2020). Accordingly, the issue is whether defendant can claim plain error when he has waived his right to a speedy trial. We find that he cannot.

¶ 35 In each of the cases relied upon by defendant, the courts conflated a defendant's constitutional right to a speedy trial with his statutory right to a speedy trial. The court in *Gay* originated the error. Without further analysis, *Gay* stated that a "speedy trial is a substantial fundamental right (*People v. Crane*, 195 Ill. 2d 42, 46, 743 N.E.2d 555, 559 (2001)); thus, we will review defendant's claim under the plain-error doctrine despite defendant's failure to file a motion to dismiss the charges or file a posttrial motion." *Gay*, 376 Ill. App. 3d at 799. *Gay*'s reliance on *Crane* was misplaced. *Crane* was referencing an accused's constitutional right to a speedy trial, not his statutory right to a speedy trial. See *Crane*, 195 Ill. 2d at 46 ("[t]he sixth amendment right to a speedy trial is fundamental").

¶ 36 The *McKinney* court simply repeated *Gay*'s misstatement. The defendant in *McKinney* claimed a violation of his statutory speedy trial right and conceded that he had failed to properly preserve the issue for review. *McKinney*, 2011 IL App (1st) 100317, ¶ 27. The defendant argued that the court should nonetheless consider the issue under the plain-error doctrine. *Id.* The appellate court, citing *Gay*, agreed that, "despite the defendant's failure to include this

issue in the motion for a new trial, it is subject to plain error review because a speedy trial implicates fundamental constitutional concerns." *Id.* ¶ 29.

¶ 37 *Mosley* also repeated *Gay*'s misstatement that a speedy trial is a substantial fundamental right, without distinguishing between statutory and constitutional speedy trial rights. *Mosley*, 2016 IL App (5th) 130223, ¶ 9. The defendant in *Mosley* claimed he was denied his statutory right to a speedy trial. *Id.* Although the defendant failed to raise the issue in the trial court, the *Mosley* court cited *Gay* in electing to "address the issue under the plain-error doctrine because a speedy trial is a substantial fundamental right." *Id.*

¶ 38 Similarly, the defendant in *Smith* claimed a violation of the speedy trial statute and failed to preserve the issue for appeal. Citing *McKinney*, the *Smith* court stated that it would "accept defendant's request to consider his argument under the plain error doctrine." *Smith*, 2016 IL App (3d) 140235, ¶ 10. *Smith* found that the trial court had erred in denying the defendant's motion to dismiss on speedy trial grounds because the defendant's trial was held outside the 120-day statutory speedy trial limit. *Id.* ¶ 20. *Smith* concluded that the defendant was entitled to relief under the plain-error doctrine. *Id.* ¶ 21.

¶ 39 As noted, the speedy trial statute was designed to implement the constitutional right to a speedy trial, but the constitutional right to a speedy trial is not coextensive with the statutorily prescribed period. *Crane*, 195 Ill. 2d at 48. We observed in *Pearson*, 88 Ill. 2d at 216, that, even prior to the enactment of section 114-1, case law had long established that the right to discharge under section 103-5 was waived if the claim had not been raised by the defendant prior to his conviction.

¶ 40 For example, in *People v. Morris*, 3 Ill. 2d 437, 441-43 (1954), the court rejected the defendant's postconviction claim he had a constitutional right to discharge because he was not tried within four months from the time of his commitment, as set forth in the statutory speedy trial statute in effect at the time (Ill. Rev. Stat. 1953, ch. 38, ¶ 748). The *Morris* court rejected that claim, pointing out that the right to discharge could be waived, and is waived, when the accused fails to raise the question prior to conviction. *Morris*, 3 Ill. 2d at 442. *Morris* stated, "[i]n a case where the question concerns whether there has been a waiver of the statute, this court has held the case does not involve the denial of a constitutional right, and the defendant cannot raise the issue in a petition under the Post-Conviction Hearing Act." *Id.* Further, quoting *People v. Farley*, 408 Ill. 288, 295 (1951), the *Morris* court explained,

> " '[i]f a defendant is afforded the basic right of a trial, and the question arises as to whether he has waived the requirements of the statute as to the time within which he must be tried, *** the decision of such questions does not involve the denial of constitutional rights, but only the manner of asserting, waiving or enforcing them.' " *Morris*, 3 Ill. 2d at 442.

*Morris* concluded that the defendant's postconviction petition did not raise a constitutional question but, rather, raised a question concerning the statutory procedure implementing a constitutional right. *Id.* at 443.

¶ 41 Consistent with the long-held application of waiver in our case law, section 114-1 of the Code expressly states that a violation of section 103-5 is waived unless a motion for discharge is made prior to trial. As the appellate court noted, the legislature would not have provided for waiver of the speedy trial statute if a violation of that statute alone resulted in an unfair trial or challenged the integrity of the judicial process. 2022 IL App (4th) 200656-U, ¶ 51. We

therefore hold that a violation of section 103-5 does not alone constitute plain error. To the extent that the decisions in *Gay*, *McKinney*, *Mosley*, and *Smith* held to the contrary, those decisions are hereby overruled. We therefore affirm the appellate court's finding that defendant waived his right to claim a violation of the speedy trial act in this case.

¶ 42    Defendant next argues that he did not knowingly waive his right to counsel because the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 43    This court has recognized that an accused has a right to self-representation that is " 'as basic and fundamental as [the] right to be represented by counsel.' " *People v. Wright*, 2017 IL 119561, ¶ 39 (quoting *People v. Nelson*, 47 Ill. 2d 570, 574 (1971)). Thus, as long as a defendant's waiver of his constitutional right to counsel is voluntary, knowing, and intelligent, he may waive that right. *Id.*

¶ 44    Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) governs an accused's waiver of his right to counsel. Rule 401(a) provides:

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> > (1) the nature of the charge;
> >
> > (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
> >
> > (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." *Id.*

Compliance with Rule 401(a) is required for an effective waiver of counsel. *Wright*, 2017 IL 119561, ¶ 41.

¶ 45    Defendant claims that the trial court failed to comply with the second admonition, that the court inform him of the possible penalties he was facing. Defendant points out that he was initially told that he was eligible for extended-term sentencing based upon a prior residential burglary conviction and faced a sentence of 7 to 14 years' imprisonment on each count of aggravated domestic battery. In fact, defendant did not have a prior residential burglary conviction, so he was not eligible for extended-term sentencing. Defendant instead was subject to a term of three to seven years' imprisonment on each count. Defendant also states that the trial court did not advise him that he could receive a prison sentence on each conviction or that he could be ordered to serve those convictions consecutively. In addition, defendant was instructed that he faced an MSR term of four years to life, when in fact he was subject to an MSR term of four years. Defendant argues that the trial court's admonishments fell far short of what Rule 401(a) requires and that the appellate court erred in finding substantial compliance with the rule.

¶ 46    Although this court has held that compliance with Rule 401(a) is required for an effective waiver of counsel, this court has also recognized that strict, technical compliance with Rule 401(a) is not always required. *People v. Haynes*, 174 Ill. 2d 204, 236 (1996). Substantial compliance with Rule 401(a) will effectuate a valid waiver "if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received

did not prejudice his rights." *Id.* Each waiver of trial counsel must be assessed on the particular facts of the case. *People v. Reese*, 2017 IL 120011, ¶ 62.

¶ 47 In addressing this issue, the appellate court noted that defendant did not raise the issue in a posttrial motion. 2022 IL App (4th) 200656-U, ¶ 54. The appellate court stated it would first address whether an error occurred before considering whether defendant preserved the error for review or whether plain-error review was appropriate. *Id.* The appellate court found no error, concluding that the trial court substantially complied with Rule 401(a) and that defendant's waiver of counsel was valid. *Id.* ¶ 59.

¶ 48 The appellate court is correct that, in addressing a defendant's claim under the plain-error doctrine, we must first determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). In finding substantial compliance, the appellate court pointed out that the information provided to the trial court at the time the trial court gave the Rule 401(a) admonishments did indicate that defendant was eligible for extended-term sentencing. 2022 IL App (4th) 200656-U , ¶ 58. The error was not discovered until defendant's trial had begun. *Id.* In addition, the trial court's admonishments concerning the MSR term were greater than the actual MSR term, so defendant could not claim prejudice in his decision to waive counsel based upon the MSR term. *Id.* The trial court also admonished defendant that he could receive a prison sentence of up to 14 years. *Id.* Given the fact that defendant knew he could receive a prison sentence of up to 14 years, the appellate court stated it could not see how an admonishment that defendant faced a maximum of 7 years on each count, which could run consecutively, would have affected defendant's decision to proceed *pro se*. *Id.* ¶ 59.

¶ 49 The appellate court next rejected defendant's claim that the trial court should have readmonished him prior to sentencing. *Id.* ¶ 60. The defendant claimed that the discovery that defendant was not eligible for extended-term sentencing constituted a change in circumstances that required the trial court to readmonish him. The appellate court again pointed out that the discovery that defendant was not eligible for extended-term sentencing did not alter the maximum penalty defendant faced, and defendant did not indicate how a correct explanation of why defendant would receive a sentence of up to 14 years would have affected his decision to proceed *pro se*. *Id.* The appellate court therefore found that defendant's right to counsel was not violated. *Id.* ¶ 61.

¶ 50 In this court, defendant concedes that he agreed to proceed *pro se* knowing that he faced the possibility of 14 years in prison on each of the aggravated battery counts under the extended-term provisions. Defendant claims, however, that he may have considered it unlikely that he would receive an extended-term sentence because he knew he had never been convicted of a residential burglary and, for that reason, may have elected to proceed without counsel. Defendant also argues there is a difference between being subject to a 14-year sentence on each count versus facing a 14-year sentence only if he was convicted on both counts and was sentenced to a term of 7 years on each count, to be served consecutively. Defendant further points to the trial court's error in admonishing him that he faced an MSR term of four years to life, when he only faced an MSR term of four years.

¶ 51 According to defendant, the trial court's misstatements prejudiced him in his decision to reject counsel. Defendant notes that he was dissatisfied with appointed counsel's temperament and counsel's refusal to file certain motions on his behalf. Defendant claims that, with accurate admonishments, he may have been more likely to countenance appointed counsel's ill

temperament. For that reason, defendant maintains that any errors in the trial court's attempts to comply with Rule 401(a) were not harmless.

¶ 52    This court has consistently found substantial compliance with Rule 401(a) when the trial court accurately stated the maximum sentence prescribed by law. For example, in *People v. Coleman*, 129 Ill. 2d 321, 331 (1989), the trial court admonished the defendant that the maximum sentence prescribed by law was the death penalty and that the minimum sentence was a 20-year term of imprisonment. In fact, the minimum sentence was natural life imprisonment. *Id.* at 332. *Coleman* stated that, "[w]here a defendant knows the nature of the charges against him and understands that as a result of those charges he may receive the death penalty, his knowledge and understanding that he may be eligible to receive a lesser sentence pales in comparison." *Id.* at 333-34; see also *Haynes*, 174 Ill. 2d 204 (court found substantial compliance with Rule 401(a) where the defendant was admonished that he faced the possibility of the death penalty but was not admonished of the minimum and maximum penalties for a burglary charge); *People v. Johnson*, 119 Ill. 2d 119 (1987) (court found substantial compliance with Rule 401(a) where the defendant was admonished that he faced the possibility of the death penalty but was erroneously told that the minimum sentence was a number of years rather than life imprisonment).

¶ 53    This court has found substantial compliance even where the trial court understated the maximum term prescribed by law in its admonishment. In *Wright*, 2017 IL 119561, the trial court incorrectly admonished the defendant that he faced a 60-year maximum sentence, rather than the correct, 75-year maximum sentence. *Wright* found that the trial court had substantially complied with Rule 401(a) and that the defendant made a voluntary, knowing, and intelligent waiver of counsel prior to being allowed to proceed *pro se*, despite the trial court's incorrect admonishment concerning the maximum sentence. *Id.* ¶¶ 54-55. *Wright* noted that the defendant's reason for proceeding *pro se* was due to speedy trial concerns and did not hinge on the maximum sentence for the charged offenses. *Id.* ¶ 55.

¶ 54    In this case, defendant was correctly admonished concerning the maximum sentence he could face. The trial court's error was in admonishing defendant how he would serve that sentence and in overstating the MSR term. Defendant's explanation to the court for proceeding *pro se* was that appointed counsel "has been abusive and aggressive toward me and forced papers in my hand, as well as using foul language when I asked him, at least, four times, to go to Court for a bond reduction, and he wouldn't do that along with many other things." As in *Wright*, the defendant's reason for proceeding *pro se* did not hinge upon how defendant might serve the 14-year maximum penalty for the charges against him. Defendant's speculation that he might not have proceeded *pro se* had he known how the 14-year penalty might be imposed is not supported by the record. Further, as the appellate court found, defendant chose to proceed *pro se* believing he potentially could face an MSR term of four years to life. Under the circumstances, we see no prejudice to defendant's right to waive counsel when he was in fact subject to a significantly lower MSR term.

¶ 55    Defendant next argues that, even if he waived his right to counsel at trial, the appellate court erred in finding that he knowingly waived his right to sentencing counsel. Defendant claims that the discovery that he was not subject to extended-term sentencing was a substantial change of circumstances requiring readmonishment prior to sentencing.

- 11 -

¶ 56    This court applies the "continuing waiver" rule regarding a defendant's waiver of counsel. *People v. Simpson*, 172 Ill. 2d 117, 138 (1996). The continuing waiver rule provides that, "absent significantly changed circumstances or a later request for counsel, an intelligently and knowingly made waiver of counsel applies to all phases of trial." *Id.* Circumstances that require a trial court to readmonish the defendant before sentencing "include lengthy delays between trial phases, newly discovered evidence which might require or justify advice of counsel, new charges brought, or a request from defendant." *Id.*

¶ 57    Defendant argues that the discovery that he was not subject to extended-term sentencing was a substantial change in circumstances requiring readmonishment. The appellate court rejected this claim, holding that the discovery that "defendant was not extended-term eligible[ ] did not alter the true maximum penalty defendant was facing." 2022 IL App (4th) 200656-U, ¶ 60. Nor did defendant give any indication that he wanted the assistance of counsel at sentencing. *Id.*

¶ 58    The appellate court was correct. Defendant characterizes the finding that he was not eligible for extended-term sentencing as an amendment to the information. It was not. As the appellate court found, defendant was always on notice that he faced a maximum sentence of 14 years' imprisonment. A change in how the 14-year sentence might be imposed did not constitute a significant change in circumstances requiring the trial court to readmonish defendant of his right to counsel at sentencing.

¶ 59    As the appellate court found, the trial court substantially complied with Rule 401(a) in admonishing defendant. Defendant therefore effectively waived his right to counsel at trial and continuing through sentencing. Because the trial court substantially complied with Rule 401(a), defendant has failed to establish a clear or obvious error as required to obtain relief under the plain-error doctrine. The appellate court correctly rejected defendant's claim that he did not knowingly waive his right to counsel.

¶ 60                                                    CONCLUSION

¶ 61    For the foregoing reasons, we affirm the appellate court's finding that defendant waived any claim that his statutory right to a speedy trial was violated. We also affirm the appellate court's determination that defendant's waiver of his right to counsel at trial and sentencing was voluntary, knowing, and intelligent based upon the trial court's substantial compliance with Rule 401(a). We therefore affirm the appellate court's judgment on those issues. We remand the case to the trial court for further proceedings consistent with the appellate court's order remanding the case to the trial court for resentencing on the reduced convictions for aggravated battery.

¶ 62    Appellate court judgment affirmed.

¶ 63    Cause remanded.