NOTICE
Decision filed 02/28/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231314-U

NO. 5-23-1314

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 23-CF-78 |
| | ) | |
| DEREK WILSON, | ) | Honorable |
| | ) | Matthew J. Hartrich, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court did not err in entering judgment against the defendant following his guilty plea. There is no arguable basis for challenging the underlying judgment of conviction in the appeal from the revocation of probation. The court did not err in allowing the defendant to proceed *pro se* during the preliminary hearings prior to the probation revocation hearing where the defendant was properly admonished and his waiver of counsel was knowing, intelligent, and voluntary. The State proved that the defendant violated the terms of his probation by a preponderance of the evidence, and the court did not abuse its discretion in sentencing the defendant within the statutory range for the offenses to which he pled guilty. As any arguments to the contrary would lack merit, we grant the defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2     Defendant Derek Wilson pled guilty to domestic battery in exchange for a recommendation of 24 months of probation. At the time, he was on probation stemming from convictions for possession of methamphetamine from 2022 and 2023. The State subsequently filed a petition alleging violations of probation. Following a hearing, the circuit court found that Wilson violated

1

the terms of his probation and sentenced him to 10 years in prison for the domestic battery conviction and 12 months of conditional discharge for the two methamphetamine convictions. This appeal followed.

¶ 3 Wilson's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), along with a memorandum of law in support of that motion.

¶ 4 This court gave Wilson an opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit. However, he has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and the accompanying memorandum of law, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 5 BACKGROUND

¶ 6 A. Charging and Guilty Plea Hearing

¶ 7 The State charged Wilson by information with one count of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022)), on May 11, 2023. Wilson was charged with a Class 3 offense, as he had previously been convicted of domestic battery in 2006 and 2022. On June 21, 2023, he pled guilty to Class 3 domestic battery in exchange for the State's recommendation of 24 months of probation. The terms of the probation included not violating any criminal statute or ordinance, cooperating with his assigned probation officer, performing public service, paying fees, undergoing substance abuse, anger management, domestic violence, and mental health evaluations, and complying with treatment recommendations. The State also informed the court

that Wilson was currently already on probation relating to two convictions of possession of methamphetamine from 2022 and 2023.

¶ 8      The circuit court admonished Wilson that he was pleading guilty to the offense of domestic battery, charged as a Class 3 felony because of his prior domestic battery convictions, and that the possible sentencing range was 2 to 5 years in the Illinois Department of Corrections (IDOC)—or 5 to 10 years if extended-term eligible—followed by up to 4 years of mandatory supervised release (MSR). He could also be sentenced to probation or conditional discharge for a maximum period of 30 months and a maximum fine of up to $25,000. Wilson confirmed that he understood the possible sentencing range for the offense.

¶ 9      The court further told Wilson that he had the right to plead guilty or not guilty, the right to go to a trial by jury or by a judge, and the rights to confront and cross-examine the State's witnesses against him, subpoena his own witnesses, and testify on his own behalf or remain silent. The court explained that the State would have the burden at trial of proving his guilt beyond a reasonable doubt, and that if he continued in his plea of guilty, he would be giving up all of these rights. Wilson confirmed that he understood, that no one threatened him, forced him, or made promises beyond the record to obtain his guilty plea, and that he was entering into the plea agreement of his own free will.

¶ 10     The State then provided the factual basis. If the case proceeded to trial, the State alleged that it would call witnesses who would testify that on May 8, 2023, Wilson struck his wife in the face with his fist at their home. His wife did not suffer serious injuries from the attack. Wilson had previously been convicted of domestic battery on three prior occasions, twice in 2006 and once in 2022. He also had two prior convictions for possession of methamphetamine in 2022 and 2023.

Wilson's counsel indicated that Wilson agreed that the State would have been able to present this evidence at trial.

¶ 11    The court then accepted Wilson's guilty plea as knowingly and voluntarily made and supported by a factual basis. The court told Wilson that he needed to make sure to comply with the conditions of probation, and that, based on his criminal history, his sentencing range if he violated those terms would be 2 to 10 years in IDOC followed by up to 4 years of MSR. The court further informed him that if he were unable to comply with the terms of probation, he would likely be sentenced to the IDOC on a probation violation.

¶ 12    The court admonished Wilson on his right to appeal and the procedures for exercising that right. This included the requirement of filing a written motion asking to have the judgment vacated and for leave to withdraw his guilty plea within 30 days of the imposition of the sentence, which he must file prior to taking an appeal.

¶ 13                    B. Probation Revocation Hearing

¶ 14    On August 23, 2023, the State filed a petition to revoke Wilson's probation, alleging that he had violated the conditions thereof in that he (1) failed to complete substance abuse treatment; (2) violated criminal laws on or around January 21, 2023, by being charged with possession of a substance containing methamphetamine, possession of drug paraphernalia, and driving on a suspended license; (3) violated criminal laws on or about May 11, 2023, by being charged with domestic battery; and (4) violated criminal laws on or about August 15, 2023, by being charged with domestic battery.

¶ 15    The circuit court held a preliminary hearing to detain Wilson on September 13, 2023. Wilson appeared without counsel, representing himself at the hearing. Bridgeport Chief of Police Danny Ash testified on behalf of the State. According to Ash, on August 15, 2023, Wilson was

4

flagged down by Tonya Green and her husband, James Hill, who told Ash that there was a lot of shouting coming from the Wilsons' home. Green and Hill saw the Wilsons argue, and Wilson pushed his wife, Andrea. Ash later interviewed Andrea, and she claimed that during the argument, Wilson grabbed her arm and shoved her. The court found probable cause that Wilson violated probation and ordered him detained.

¶ 16    Wilson filed a motion for pretrial release, and represented himself at an October 11, 2023, hearing on his motion and on the State's petition to detain. The record from this hearing indicates that Wilson first advised the court that he wished to represent himself at a September 1, 2023, hearing and reaffirmed his request at hearings on September 6 and 13, 2023.[1] The court ordered Wilson detained at the October 11, 2023, hearing, finding that he presented a specific threat to Andrea Wilson's safety.

¶ 17    On November 8, 2023, Wilson requested the appointment of counsel to represent him in all his pending criminal cases in Lawrence County. The court noted that it had previously asked him whether he wanted an attorney appointed to him, and he had declined. Wilson confirmed that he wanted an attorney, and the court appointed one to represent him.

¶ 18    The court held a hearing on the State's petition on November 15, 2023. Wilson appeared at the hearing with his newly appointed counsel. Cumberland County Sheriff's Deputy Ashley Decker testified that on January 21, 2023, she pulled over a red pickup truck; Wilson was driving, and Andrea was a passenger. During the traffic stop, Decker found a baggie and a glass pipe. She testified that field testing showed that the items contained methamphetamine residue. Decker testified that Wilson admitted that his license was revoked; she confirmed that his license was suspended when she ran his information through LEADS.

---

[1] The transcripts from the September 1 and 6, 2023, hearings are unavailable.

¶ 19    James Hill testified at the hearing that on August 15, 2023, he was working in his garage when he heard yelling and screaming coming from around Griffin's Pizza House, a nearby restaurant. Hill testified that he saw the Wilsons arguing with each other. Hill knew them to be a married couple that lived six houses away from him. According to Hill's testimony, during the argument, Wilson grabbed Andrea by her arm, spun her around, and shoved her. Hill called police officers about the incident, and the dispatch told him that officers were already responding to the incident.

¶ 20    Ash testified consistently with his testimony at the September 13, 2023, preliminary hearing. He stated that on August 15, 2023, Tonya Green told him about an altercation between the Wilsons near Griffin's Pizza House. Ash later took statements about the incident from Andrea and James Hill. He took photos of Andrea that showed bruising on her arm and red marks around her collarbone and identified those photographs in court. Ash testified that Wilson and Andrea are married.

¶ 21    Lawrence County probation officer Jodi Wesley testified that Wilson was on probation for two domestic battery convictions and one conviction for possession of a substance containing methamphetamine. According to Wesley's testimony, Wilson started drug treatment at Gateway Foundation on March 15, 2023, but did not successfully complete the program. She also testified that he did not communicate well during his probation. She signed the State's petition because Wilson did not complete the treatment at Gateway and received new criminal charges. The circuit court took judicial notice of convictions for domestic battery against Wilson in Lawrence County case Nos. 06-CM-50, 06-CM-195, 22-CF-113, and 23-CF-78.

¶ 22    Wilson testified at the hearing that on January 21, 2023, he was going antiquing with Andrea. Andrea's parents owned the car he was driving, and Wilson did not know what was inside

6

the vehicle. Wilson invoked his fifth amendment rights regarding any other questioning at the hearing.

¶ 23    After hearing arguments from both parties, circuit court ruled that the State had proven by a preponderance of the evidence that Wilson committed domestic battery on August 15, 2023, and drove with either a revoked or suspended license on January 21, 2023, thus violating the conditions of his probation. The court noted that the photographic evidence from the former incident showed significant bruising on Andrea's body. Regarding the latter incident, while the court did not specifically find that the State had met its burden of proving that Wilson was in possession of a substance containing methamphetamine, it stated that there was definite proof of his driving on a suspended or revoked license. The court also found that Wilson had successfully completed a residential treatment program. The matter was then set for sentencing.

¶ 24                    C. Sentencing and Appeal

¶ 25    At the December 13, 2023, sentencing hearing, Andrea Wilson testified and asked the court for leniency. She explained that she escalated the argument on August 15, 2023, and opined that many of Wilson's problems were related to his mental illness and brain injuries from his military service. However, Andrea testified that her statements to the police were truthful, and that she could not be sure that Wilson would not hurt her again.

¶ 26    Wilson spoke in allocation, beginning with an apology to the court for his prior outbursts during the hearing. He told the court that ever since he had had a stroke, he had not felt like himself, but he was working very hard and had learned a lot in rehab. He said that he had been excited to work on his mental health while on probation, but after passing two drug tests, he "messed up." However, he did not think he needed to go to prison for his mistakes.

7

¶ 27   The circuit court took judicial notice of Wilson's criminal history, including four convictions for domestic battery in between 2006 and 2023, and his conviction for possession of a substance containing methamphetamine in 2022.

¶ 28   The circuit court sentenced Wilson to 10 years in the IDOC for his domestic battery conviction and 12 months of conditional discharge for the two methamphetamine convictions, as well as 4 years of MSR. In its sentencing ruling, the court found that the factors in aggravation were that Wilson's conduct caused harm and threatened serious harm, his prior criminal history, and the need for deterrence. In mitigation, the court opined that it was possible Wilson did not contemplate that his conduct would cause serious harm.

¶ 29   The court admonished Wilson regarding his right to appeal. It explained that, prior to filing an appeal, he must file a written motion to reconsider the sentence or to challenge the sentencing hearing within 30 days of the present date. The court also informed him that if he could not afford it, a copy of the sentencing hearing transcript would be provided to him, and he could be appointed counsel to assist him in his motion and/or appeal. The court also admonished Wilson that he would lose his right to appeal if he did not timely file a written motion and notice of appeal.

¶ 30   Wilson filed a notice of appeal on December 18, 2023. The court appointed OSAD to represent him on appeal. OSAD now moves to withdraw as counsel.

¶ 31                                  ANALYSIS

¶ 32   OSAD argues that the circuit court properly entered judgment against Wilson following his guilty plea, the court properly revoked his probation and sentenced him after finding that he violated the terms of his probation, and that there are no meritorious arguments to the contrary. In the memorandum supporting its *Anders* motion to withdraw as counsel, OSAD states that it considered raising four potential issues on appeal:

8

(1) Whether the underlying judgment arising from Wilson's guilty plea is valid;

(2) Whether the circuit court erred in allowing Wilson to represent himself during the preliminary hearings before the hearing on the State's petition to revoke probation;

(3) Whether the State proved by a preponderance of the evidence that Wilson violated the terms of his probation; and

(4) Whether the circuit court abused its discretion in sentencing Wilson to 10 years in prison following a finding that he violated his probation order?

OSAD has determined that these issues would be without arguable merit, and the court's criminal judgment, order revoking probation, and sentence were therefore proper. As we agree with counsel's assessment, we grant OSAD leave to withdraw.

¶ 33                                    A. Validity of the Underlying Judgment

¶ 34    It is well-settled that when no appeal is taken from a judgment imposing a sentence of probation and the time for appeal has expired, the reviewing court has no jurisdiction to review that judgment in an appeal from the subsequent revocation of that probation unless the underlying judgment of conviction is void. *People v. Gregory*, 379 Ill. App. 3d 414, 418 (2008). Here, the trial court entered the judgment of conviction and imposed the sentenced probation on June 21, 2023, and Wilson did not timely appeal from that judgment. Consequently, he can challenge the underlying judgment in the present appeal only if it is void. A judgment is void only if (1) it was entered by a court that lacked personal or subject-matter jurisdiction or (2) it was based on a statute that is facially unconstitutional and void *ab initio*. *People v. Abdullah*, 2019 IL 123492, ¶ 13. We agree with OSAD that there is nothing in the record that would support a finding of voidness under either condition. No meritorious challenge to the underlying judgment can be raised in the present appeal.

9

¶ 35                                     B. Waiver of Counsel

¶ 36    The United States and Illinois Constitutions guarantee criminal defendants the right to

counsel at all critical stages of the proceedings against them. U.S. Const., amends. VI, XIV; Ill.

Const. 1970, art. I, § 8. The right to counsel may be waived; to proceed *pro se*, "a defendant must

knowingly and intelligently relinquish his right to counsel." *People v. Baez*, 241 Ill. 2d 44, 115-16

(2011); *People v. Seal*, 2015 IL App (4th) 130775, ¶ 27 ("A defendant may *** proceed without

counsel only if he voluntarily and intelligently elects to do so."). Waiver of counsel "must be clear

and unequivocal, not ambiguous." *Baez*, 241 Ill. 2d at 116. As our supreme court explained in

*Baez*:

> "In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation. [Citation.] Courts must 'indulge in every reasonable presumption against waiver' of the right to counsel. [Citations.] The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances of that case, including the background, experience, and conduct of the accused. [Citation.] We review a trial court's determination for abuse of discretion." *Id.*

¶ 37    Illinois Supreme Court Rule 401(a) governs the trial court's acceptance of a defendant's

waiver of counsel, and requires the states as follows:

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> > (1) the nature of the charge;
>
> > (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> > (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

10

¶ 38    Compliance with Rule 401(a) is a prerequisite for an effective waiver of counsel. *People v. Marcum*, 2024 IL 128687, ¶ 46; *People v. Wright*, 2017 IL 119561, ¶ 41. However, " '[s]trict technical' " compliance with the rule is not always required; substantial compliance will suffice to effectuate a valid waiver " 'if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights.' " *Wright*, 2017 IL 119561, ¶ 41 (quoting *People v. Haynes*, 174 Ill. 2d 204, 236 (1996)). While the Rule 401(a) admonishments are not necessarily required where the defendant waives counsel late in the proceedings, after conviction and sentencing, our supreme court has applied the rule's guidelines to a probation revocation hearing. See *People v. Young*, 341 Ill. App. 3d 379, 386-87 (2003) (Rule 401(a) admonitions were not required where the defendant appeared *pro se* on a posttrial motion, because he had already been convicted and sentenced and "already knew everything a Rule 401(a) admonishment would have told him"); but see *People v. Baker*, 94 Ill. 2d 129 (1983) (reviewing court's acceptance of defendant's waiver of counsel in probation revocation proceedings for Rule 401(a) compliance).

¶ 39    In *Baker*, the supreme court explained that, in a probation revocation proceeding, the important question is not " 'whether the failure to comply with Rule 401(a) of itself renders the waiver ineffective, but whether, considering the entire record, the defendant was shown to have knowingly and understandingly waived his right to counsel.' " *Baker*, 94 Ill. 2d at 133 (quoting *People v. Barker*, 62 Ill. 2d 57, 59 (1975)). Each waiver of counsel must be reviewed under the particular facts of the case. *Marcum*, 2024 IL 128687, ¶ 46.

¶ 40    Here, the record on appeal reveals that Wilson first expressed his wish to represent himself at a hearing on September 1, 2023, and reaffirmed his request at a hearing on September 6, 2023. However, transcripts from these hearings are not available. The record contains a report of

11

compliance from the court reporter, who states that she conducted a diligent search of her notes and concluded that she was not present on those dates, and transcripts from these hearings are not available.

¶ 41    Wilson appeared *pro se* at the preliminary detention hearing on September 13, 2023. The court informed him that, for the hearing on the State's petition, he had a right to represent himself, to hire an attorney, or to have a public defender appointed to represent him if he could not afford counsel. The court then asked how he wished to proceed regarding the probation violations, and Wilson responded that he wanted to represent himself. He then appeared *pro se* at an October 11, 2023, detention hearing, at which the court again asked him whether he still planned on representing himself. Wilson answered that he did. On November 8, 2023, he again appeared *pro se* but requested that an attorney be appointed to him. The court granted his request, and he continued in the proceedings with counsel, including at the hearing on the petition.

¶ 42    It is the appellant's duty to provide a sufficiently complete record of the lower court proceedings to support his claims on appeal, and the court will resolve any doubts arising from an incomplete record against the appellant. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 318-19 (2003). However, this rule is relaxed where a defendant is not at fault for the incompleteness of the record, and he "is able to establish a colorable need for the missing portion of the record in order to obtain appellate review of his claim." *People v. Smith*, 2021 IL App (1st) 190421, ¶ 56. "If the defendant bears no fault and the evidence is material, the court considers whether other means are available to afford adequate review." *People v. Sims*, 403 Ill. App. 3d 9, 15 (2010).

¶ 43    The record shows that Wilson is not at fault for the absence of the two September 2023 transcripts at issue, as the court reporter was not present at these hearings. As the missing

12

transcripts would contain evidence of whether the circuit court properly admonished Wilson at the time that he waived his right to counsel, they are clearly material to a potential claim that the court erred in allowing Wilson to represent himself leading up to the hearing on the State's petition. However, OSAD argues that the record on appeal, even without these transcripts, contains sufficient evidence to establish that Wilson was informed of the Rule 401(a) admonishments when he represented himself. For the following reasons, we agree. We find that the missing transcripts would not cause Wilson to be denied meaningful review of this potential issue on appeal, and that Wilson was properly admonished pursuant to Rule 401(a).

¶ 44    The transcript of the guilty plea hearing shows that the circuit court explained to Wilson the nature of the probation order, including the consequences of violating the terms of probation. The court further informed him of the sentencing range he would face if the court found him in violation of the probation order. Wilson was also aware that, despite his waiver, he still had a right to counsel, as evidenced by the fact that he asked the court to appoint him counsel before his probation revocation hearing.

¶ 45    Thus, even without the transcript of the hearing at which Wilson first waived his right to counsel, it is apparent from the record on appeal that the court sufficiently admonished him, and that Wilson made a knowing, intelligent, and voluntary waiver. Additionally, that waiver was clear and unequivocal, as evidenced by his continued assertion of his desire to represent himself at each subsequent hearing until he made his request for the appointment of counsel. Therefore, based on the facts of this case, we find that the circuit court did not abuse its discretion in allowing Wilson to represent himself at the hearings prior to the hearing on the petition, and any such challenge would lack merit.

13

¶ 46 Lastly, we note that there is no colorable need for the two unavailable transcripts in order to obtain appellate review of any potential claim aside from the aforementioned challenge to the court's compliance with Rule 401(a). Therefore, Wilson could not show that he was denied meaningful appellate review of any other potential claim.

¶ 47                    C. Court's Finding of Probation Violation

¶ 48 The State bore the burden of proving by a preponderance of the evidence that Wilson violated his probation. 730 ILCS 5/5-6-4(c) (West 2022). "The determination to terminate probation rests within the discretion of the trial court," and we will not disturb the trial court's ruling unless its determination was against the manifest weight of the evidence. (Internal quotation marks omitted.) *People v. Keller*, 399 Ill. App. 3d 654, 662 (2010). A decision is against the manifest weight of the evidence when the opposite result is clearly evident. *Id.* A decision to terminate probation is not *per se* against the manifest weight of the evidence merely because there is a conflict in the evidence. *Id.* at 663; *People v. Taube*, 299 Ill. App. 3d 715, 721 (1998).

¶ 49 Our courts have found sufficient basis for a determination that a probation violation occurred where the State showed that the defendant: failed to appear for a scheduled drug test (*Keller*, 399 Ill. App. 3d at 663); failed, even once, to report to his probation officer (*People v. Jones*, 377 Ill. App. 3d 506, 508 (2007) (collecting cases)); failed to obtain a required drug and alcohol evaluation (*People v. Clark*, 313 Ill. App. 3d 957, 960-61 (2000)); and failed to complete a halfway house residency, even where that failure was not willful (*People v. Konwent*, 405 Ill. App. 3d 794, 800 (2010)).

¶ 50 One of the conditions of Wilson's probation was that he was prohibited from violating any criminal statutes of any jurisdiction. The State alleged in its petition that he violated this condition

14

by committing the offense of domestic battery on August 15, 2023. The State also alleged that Wilson committed the offense of driving on a suspended license on January 21, 2023.

¶ 51 Regarding the first offense, the State was required to show by a preponderance of the evidence that Wilson "knowingly without legal justification by any means *** [made] physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a)(2) (West 2022). The State presented the testimony of Hill, who testified that Andrea and Wilson were married and lived together, that he witnessed them arguing on the date of the incident, and that he further witnessed Wilson grab and shove Andrea. Ash also testified that the Wilsons were married and lived together and stated that he took photos of Andrea's bruises after responding to the scene of the incident. He also identified the photos in court.

¶ 52 Regarding the second offense, the elements of driving on a suspended or revoked license are "(1) the act of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege." (Internal quotation marks omitted.) *People v. Jackson*, 2013 IL 113986, ¶ 16; see also 625 ILCS 5/6-303(a) (West 2022). " '[T]he testimony of just one credible witness is sufficient for conviction.' " *People v. Swenson*, 2020 IL 124688, ¶ 36 (quoting *City of Chicago v. Morris*, 47 Ill. 2d 226, 230 (1970)). The State presented the testimony of Decker, who stated that she pulled over a truck driven by Wilson, and confirmed through the LEADS database that his license was suspended at the time.

¶ 53 The circuit court found that the State had proven both probation violations by a preponderance of the evidence, and revoked Wilson's probation status on those grounds. We find that the court's determination was not against the manifest weight of the evidence, and that any arguments to the contrary would lack merit.

15

¶ 54                               D. Sentencing

¶ 55    A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A sentence within the statutorily mandated range is presumed to be proper. *People v. Hamilton*, 361 Ill. App. 3d 836, 846 (2005). We review the trial court's sentencing decisions for an abuse of discretion. *Alexander*, 239 Ill. 2d at 212. We will not find that the court abused its discretion unless the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)); *People v. Means*, 2017 IL App (1st) 142613, ¶ 14.

¶ 56    We give great deference to the circuit court's judgment regarding sentencing because the court, having observed the defendant and the proceedings, " 'has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *Alexander*, 239 Ill. 2d at 213 (quoting *Stacey*, 193 Ill. 2d at 209). Therefore, we will not substitute our judgment for that of the circuit court merely because we would have weighed these factors differently. *Id.*

¶ 57    Wilson pled guilty to Class 3 domestic battery pursuant to section 12-3.2(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-3.2(a)(2) (West 2022)). The Criminal Code of 2012 provides that domestic battery is a Class 3 felony "if the defendant had 3 prior convictions under this Code for domestic battery." *Id.* § 12-3.2(b). The circuit court took judicial notice of Wilson's four prior domestic battery convictions in Lawrence County case Nos. 06-CM-50, 06-CM-195, 22-CF-113, and 23-CF-78. Wilson's conviction was also extended-term eligible because he was previously convicted of a Class 3 offense of possession of a substance containing methamphetamine in 2022. 730 ILCS 5/5-5-3.2(b)(1) (West 2022).

16

¶ 58    The statutory sentence for an extended-term Class 3 felony is a term of imprisonment "not less than 5 years and not more than 10 years." *Id.* § 5-4.5-40(a). The period of mandatory supervised release for a felony domestic battery conviction is four years. *Id.* § 5-8-1(d)(6). The circuit court sentenced Wilson to 10 years in IDOC and 4 years of MSR, which falls within the statutory sentencing range for the offense to which he pled guilty.

¶ 59    The court also sentenced Wilson to 12 months of conditional discharge for two convictions of possession of a substance containing methamphetamine. 720 ILCS 646/60(a) (West 2022). Possession of a substance containing methamphetamine is a Class 3 felony when the amount of methamphetamine is less than five grams, as in the present case. *Id.* § 60(b)(1). The statutory period of conditional discharge for a Class 3 felony is no more than 30 months. 730 ILCS 5/5-4.5-40(d) (West 2022). The sentence for these convictions was likewise within the legal range for the offense.

¶ 60    Consequently, we presume the sentencing was proper, and we defer to the discretion of the circuit court. *Hamilton*, 361 Ill. App. 3d at 846; see also *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009) (a defendant whose probation is revoked may receive any sentence that could have been imposed for the original offense).

¶ 61    The record also shows that the court considered several factors in aggravation and mitigation. The court found the harm caused by Wilson's conduct, his prior criminal history, and the need for deterrence as factors in aggravation. In mitigation, the court found that it was possible Wilson did not contemplate that his conduct would cause serious harm. We reiterate that we afford great deference to the circuit court's weighing of these factors, as the court was able to observe the defendant and the proceedings firsthand. We cannot reweigh these factors or substitute our judgment for that of the circuit court. *Alexander*, 239 Ill. 2d at 213.

17

¶ 62    Thus, we conclude that the circuit court did not abuse its discretion in sentencing Wilson, and any argument claiming otherwise would lack merit.

¶ 63                                    CONCLUSION

¶ 64    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 65    Motion granted; judgment affirmed.